24 F.3d 1337
 128 Lab.Cas. P 33,110, 2 Wage & Hour Cas. 2d
(BNA) 193
 William AVERY; Toney Bailey; Rory G. Boggs; Thomas R.
Bowerman, Jr.; Lona Faye Bows; David Brooks; Debra J.
Brown; Charles Bryant; Patrick A. Carney; Richard E.
Carter; C.D. Chappell; Rita Chatman; Wren Cooley; Robert
A. Curtis; Samuel B. Davis, Jr.; William G. Davis, Jr.;
William F. Davis, Jr.; Ronald Dye; Albert W. Edison;
Lamar L. Edwards; Steve Farmer; Shawn E. Frye; Lisa R.
Garrett; Jamie C. Grace; Kevin Green; George R. Grimmett;
Jackie Hallmark; Charles J. Hallmark, Jr.; Billy J.
Haney; Randy L. Hawkins; Edwin E. Jacks; Ronny Jones; J.
Mark King; Bobby J. Kilgore; Michael G. McCombs; Robert
C. McGinnis; Cynthia E. McGinnis; George L. Massey;
Gregory J. Mellon; Franklin D. Otwell; Tommy D. Pettus;
John Pressley; William M. Pruitt; John M. Renda; Don K.
Riggleman; Phillis Seals; Kenneth L. Sisk; David L.
Smith; Thomas E. Smith; Thurman Smith; James E. Smoot;
Leonard L. Thomas; Terry W. Truss; Alan Watson; Judy
Williams; Greg Wright; Andrew C. Yarbrough, Jr.,
Plaintiffs-Appellants,
v.
The CITY OF TALLADEGA, ALABAMA, a municipal corporation,
Defendant-Appellee.
 No. 93-6353.
 United States Court of Appeals,
Eleventh Circuit.
 July 5, 1994.
 
 George C. Longshore, Longshore, Nakamura & Quinn Birmingham, AL, for plaintiffs-appellants.
 Peyton Lacy, Jr., Lange, Simpson, Robinson & Somerville Birmingham, AL, B. Clark Carpenter, Jr., Wooten, Thornton, Carpenter, O'Brien & Lazenby, Talladega, AL, for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH and CARNES, Circuit Judges, and HAND*, Senior District Judge.
 CARNES, Circuit Judge:
 
 
 1
 Fifty-seven employees and former employees of the Talladega Police Department sued the City of Talladega, Alabama ("the City"), to recover overtime pay allegedly owed them under the Fair Labor Standards Act (FLSA), 29 U.S.C. Secs. 201 et seq. The district court entered summary judgment for the City and the plaintiffs appeal.
 
 
 2
 The shape of the issues presented is affected by the fact that there are four groups of plaintiffs, divisible according to job duties and rank: 1) the lieutenants group, which consists of those plaintiffs of that rank in the patrol and detective divisions; 2) the detectives group, which consists of those plaintiffs below the rank of lieutenant in the detective division; 3) the patrol officers group, which consists of those plaintiffs below the rank of lieutenant in the patrol division; and, 4) the jailers group.[1]
 
 
 3
 We begin the remainder of this opinion with a statement of our standard of review in part I. Our discussion of the legal issues and our holdings are contained in part II, which consists of five subparts. Subpart A involves the City's classification of its lieutenants as exempt from overtime under 29 U.S.C.A. Sec. 213(a)(1) (1965 & Supp.1994), and contains our holding that that classification is improper. Subparts B and C involve the City's classification of its jailers and its detectives, respectively, as partially exempt from overtime under 29 U.S.C.A. Sec. 207(k) (Supp.1994), and contain our holdings that those classifications are proper. Subpart D involves the issue of whether the thirty-minute meal breaks of the lieutenants, patrol officers, and detectives are compensable under the FLSA, and it contains our holding that, in most instances, they are not. Subpart E involves the issue of whether the plaintiffs' state law breach of contract claim is pre-empted by the FLSA, and it contains our negative answer to that question. Part III is our conclusion.
 
 I. STANDARD OF REVIEW
 
 4
 This Court reviews "the district court's grant of summary judgment de novo," Chapman v. Klemick, 3 F.3d 1508, 1509 (11th Cir.1993), and must resolve all reasonable factual doubts in favor of the non-moving party. Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir.1987).
 
 
 5
 The employer bears the burden of proving the availability of the executive exemption. Atlanta Professional Firefighters Union v. City of Atlanta, 920 F.2d 800, 804 (11th Cir.1991) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974)). We construe overtime exemptions narrowly, against the employer. See id. (citing Brennan v. Sugar Cane Growers Co-Op, 486 F.2d 1006 (5th Cir.1973)).
 
 II. DISCUSSION
 
 6
 As a general rule, the FLSA provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week. 29 U.S.C.A. Sec. 207(a)(1) (1965 & Supp.1994). There are exceptions, and most of this case involves some of those exceptions.
 
 
 7
 A. THE LIEUTENANTS' STATUS AS EXEMPT EXECUTIVES
 
 
 8
 The FLSA exempts from overtime "any employee employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C.A. Sec. 213(a)(1) (1965 & Supp.1994), and the City treats all of the lieutenants as exempt employees under that provision. The regulations provide, however, that in order to be classified as exempt under this provision, an employee must be paid on a salary basis, 29 C.F.R. Sec. 541.1(f) (1993). The lieutenants contend that they are not, and therefore, that they should not be treated as exempt.
 
 
 9
 Congress expressly authorized the Secretary of Labor to define the scope of the executive, administrative, and professional employee exemptions. 29 U.S.C.A. Sec. 213(a)(1) (1965 & Supp.1994). "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). According to the FLSA regulations:
 
 
 10
 An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.
 
 
 11
 29 C.F.R. Sec. 541.118(a) (1993) (emphasis added). Deductions from pay may be made, consistent with salaried status, only: when the employee is absent "from work for a day or more for personal reasons other than sickness or accident," id. Sec. 541.118(a)(2); when the employee is absent for a day or more due to sickness or disability, "if the deduction is made in accordance with a bona fide [sick leave] plan," id. Sec. 541.118(a)(3); or when the employee is penalized "in good faith for infractions of safety rules of major significance," id. Sec. 541.118(a)(5).[2] "Safety rules of major significance include only those [rules] relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines." Id. Sec. 541.118(a)(5). Neither party has challenged the validity of section 541.118(a) of the regulations, and we do not consider that question.
 
 
 12
 The lieutenants put forward a number of contentions to support their position that they are not paid "on a salary basis" as required by the regulations in order for the section 213(a)(1) exemption to apply. Decision of this issue only requires that we address one: their contention that they are subject to disciplinary sanctions for reasons other than infractions of safety rules "of major significance."
 
 
 13
 The lieutenants point out that the City suspended Lt. Jacks for three days without pay in 1989, for leaving the scene of an apparent suicide at which he was the officer in charge. They also point out that at the time this case was being litigated, the City was seeking to suspend Lt. Haney for excessive use of force against an inmate. The lieutenants maintain that neither Lt. Jacks' nor Lt. Haney's act constituted an infraction of a safety rule of major significance. They argue that because Jacks was, and Haney could be, suspended without pay for acts that were not infractions of safety rules of major significance, the City cannot properly treat the lieutenants as salaried employees subject to the overtime exemption for executive, administrative, or professional employees.
 
 
 14
 The City argues that Lts. Jacks and Haney both violated safety rules "of major significance" and suspending them without pay is, therefore, not inconsistent with their status as salaried employees. See 29 C.F.R. Sec. 541.118(a)(5). According to the City, the police department's sole purpose is "the protection of the public which it serves," and "[a]ll rules intended to advance that purpose, including those requiring that the officer in charge remain at a crime scene until relieved by a higher ranking officer, relate to the safety of the public at large." Of course, the City is right. Maintaining discipline and punishing insubordination are important to a police department's mission of protecting public safety. Unfortunately, the FLSA regulations are not written to help promote discipline and public safety. Instead, the regulations expressly restrict the disciplinary exception for loss of salary (by an exempt employee) to violation of those safety rules relating to prevention of serious danger to the physical plant of the employer or to other employees, giving as an example a rule "prohibiting smoking in explosive plants, oil refineries, and coal mines." 29 C.F.R. Sec. 541.118(a)(5). That is how the regulations, which are concerned with the employer's property and the safety of fellow employees instead of with public safety, restrict the definition of "safety rules of major significance." Of course, the City may suspend employees without pay for other types of insubordination or misconduct, but the price for doing so is loss of its ability to treat those employees as executive, administrative, or professional employees exempt from overtime pay.
 
 
 15
 Our temptation to construe the term "safety rules of major significance" broadly is throttled by the rule of our precedent that requires us to construe overtime exemptions narrowly against the employer. See Atlanta Professional Firefighters Union v. City of Atlanta, 920 F.2d 800, 804 (11th Cir.1991) (APFU ) (citing Brennan v. Sugar Cane Growers Co-Op, 486 F.2d 1006 (5th Cir.1973)). We also avoid any temptation to conclude that the regulation, insofar as it applies to law enforcement employees, is arbitrary and capricious, because the City did not raise that issue in the district court and has not suggested it in this Court.
 
 
 16
 Instead, the City attempts to fit a square peg into a round hole by arguing that the two lieutenants in question violated what the regulations define as "safety rules of major significance." The suspension involving Lt. Jacks shows how far off base the City's argument is. Lt. Jacks' precipitous departure from the scene of an apparent suicide was, in the words of his superior officer, "embarrassing," "humiliating," and quite possibly incompetent. However, that particular act of blameworthy insubordination did not create serious danger to the police department, or to any of Lt. Jacks' fellow officers. Cf. Wage & Hour op. letter No. 90-42NR (Mar. 29, 1991) ("Disciplinary deductions made from the salary of a [nurse] for violating rules relating to patient well-being and job performance are not the type of deductions that would be permitted by section 541.118(a)(5) of the regulations."). Even if we were free to construe the narrowly-defined phrase "infractions of safety rules of major significance" broadly enough to encompass a rule violation that endangers to the public at large, absent unusual circumstances, having one fewer police officer at the scene after a suicide or a crime would not endanger the public. Contrary to the City's argument, Lt. Jacks' suspension did not arise from an infraction of a safety rule of major significance within the meaning of section 541.118(a)(5). We therefore hold that Lt. Jacks' suspension destroyed his salaried status. Because he is not a salaried employee, Lt. Jacks cannot be denied overtime under the executive, administrative, or professional employee exemptions of section 213(a)(1).[3]
 
 
 17
 We now turn to the question of whether the City may continue to treat the remaining lieutenants, who have never been suspended for reasons not permitted by section 541.118(a)(5), as exempt employees. The City argues that, under APFU, an impermissible suspension without pay vitiates only the salaried status of the suspended employee. Under the City's approach, our holding that Lt. Jacks is not a salaried employee would not affect the salaried status of the other lieutenants. See APFU, 920 F.2d at 805. We reject this argument. In APFU we held that Atlanta's fire captains were salaried notwithstanding the theoretical possibility of pay deductions not permitted under section 541.118, but we did not hold that an actual deduction invalidates the salaried status of only the employee so penalized. Id. Under the City's proposed interpretation of APFU, all employees could be treated as salaried unless and until they personally suffer a pay reduction for a reason not permitted by the regulations. Such an interpretation of the regulations would lead to an irrational result, because it would favor employees who are disciplined for breaking the rules--and thus become eligible for overtime--over employees who respect those same rules. We hold that the suspension of Lt. Jacks destroyed not only his salaried status but that of the other lieutenants as well.[4]
 
 
 18
 Because the lieutenants are not paid on a salary basis within the meaning of the regulations, the City may not classify them as exempt from overtime under section 213(a)(1). Therefore, we reverse the district court's grant of summary judgment for the City on this question.
 
 
 19
 B. THE JAILERS' STATUS AS PARTIALLY EXEMPT LAW ENFORCEMENT EMPLOYEES
 
 
 20
 Section 7(k) of the FLSA, 29 U.S.C.A. Sec. 207(k) (Supp.1994), allows public agencies a partial exemption from the overtime provisions of 29 U.S.C.A. Sec. 207(a)(1) (1965 & Supp.1994) "with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions)" whose work period is at least seven but no more than twenty-eight consecutive days. Law enforcement employees subject to section 7(k) are entitled to time and one-half pay only after they have worked more than 171 hours in a twenty-eight day work period (which translates to almost forty-three hours in a seven day work period). Id.; 29 C.F.R. Sec. 553.230(c) (1993). The City treats its jailers as partially exempt from overtime under section 7(k). The jailers contend that they are not "engaged in law enforcement activities" as that term is construed by the regulations. If the jailers are correct, the City must pay them overtime for all hours worked beyond forty in any given work week.
 
 
 21
 For section 7(k) purposes, the term "any employee ... in law enforcement activities":
 
 
 22
 refers to any employee (1) who is a uniformed or plainclothed member of a body of officers and subordinates who are empowered by State statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property from accidental or willful injury, and to prevent and detect crimes, (2) who has the power to arrest, and (3) who is presently undergoing or has undergone or will undergo on-the-job training and/or a course of instruction and study which typically includes physical training, self-defense, firearm proficiency, criminal and civil law principles, investigative and law enforcement techniques, community relations, medical aid and ethics.
 
 
 23
 29 C.F.R. Sec. 553.211(a) (1993). However, subsection 553.211(f) provides that "the term 'any employee in law enforcement activities' also includes, by express reference, 'security personnel in correctional institutions.' " 29 C.F.R. Sec. 553.211(f) (1993). That subsection also defines the terms "security personnel" and "correctional institution." The jailers do not dispute that they are security personnel in a correctional institution. Instead, they argue that they must also satisfy the three requirements contained in subsection 553.211(a) before the City may classify them as partially exempt under section 7(k).
 
 
 24
 The jailers' argument makes neither linguistic nor legal sense. Their interpretation would render subsection 553.211(f) superfluous: by satisfying the 553.211(a) requirements, the jailers would be exempt law enforcement employees; there would be no need for a special regulation covering corrections officers and adding nothing to the requirements of subsection 553.211(a). The more reasonable reading is that subsections 553.211(a) and (f) set out alternative definitions of the term "employee ... in law enforcement." Because the jailers concede that they fit within the provisions of subsection 553.211(f), the district court correctly entered summary judgment for the City on this claim.
 
 
 25
 C. THE DETECTIVES' STATUS AS PARTIALLY EXEMPT LAW
 
 ENFORCEMENT EMPLOYEES
 
 26
 To be treated as partially exempt from overtime under section 7(k) of the FLSA, 29 U.S.C.A. Sec. 207(k) (Supp.1994), an employee must have a "work period" of at least seven, but not more than twenty-eight, consecutive days. The detectives, including apparently the detective lieutenant, argue that they must actually work at least seven consecutive days before the City may treat them as partially exempt under this section. They maintain that because they work a "conventional" five day work week, they are not covered by the partial exemption but instead are entitled to overtime for all hours worked beyond forty per week. The detectives' argument is foreclosed by Birdwell v. City of Gadsden, 970 F.2d 802, 806 (11th Cir.1992), in which we categorically rejected the argument that, for the section 7(k) exemption to apply, the employee must work seven consecutive days. We held: "Section 7(k) requires a work period of a minimum of 7 consecutive days.... Neither the statute nor the regulations require the employee to work on each day of the work period." Id. Indeed, the regulations expressly provide that the "work period," need not correspond to the employees' "duty cycle or pay period," so long as it is an "established and regularly recurring period of work." 29 C.F.R. Sec. 553.224(a) (1993). If the detectives' argument were valid, adoption of a twenty-eight day work period--the period the City claims to have adopted in this case--would require twenty-eight consecutive days of work. There is no authority for such a proposition. In fact, the detectives themselves argue that in a proper twenty-eight day work period "employees work seven consecutive days, are off three days, work seven days, are off two days and work seven days [and are off two days], thus working 21 days with seven off days." The statute and regulations contain no indication that this is the only permissible twenty-eight day work period. The detectives fail to explain why a "five days on, two days off" duty cycle, repeated four times, is not an equally valid twenty-eight day work period.
 
 
 27
 The detectives' contention is inconsistent with the purpose of the "work period" concept. Under the FLSA, most employers must pay overtime for all hours worked beyond forty in a given work week, even if the employee works no hours at all the following week. The work period concept was intended to ease the overtime burdens of certain public employers by allowing them to average their employees' duty hours over the designated work period, from seven to twenty-eight days in length. See Application of the Fair Labor Standards Act to Employees of State and Local Governments, 52 Fed.Reg. 2012, 2024 (1987). The detectives complain that they are "not paid overtime until 171 hours of work are accumulated in the 28 day cycle."[5] Instead of proving their claim, that fact simply demonstrates that the City has adopted, and calculates the detectives' overtime in accordance with, a twenty-eight day work period. See supra at 1342. We therefore affirm the district court's grant of summary judgment to the City on the detectives' "work period" claim.
 
 D. THE MEAL BREAKS ISSUE
 
 28
 The lieutenants, patrol officers, and detectives contend that the City has wrongfully failed to compensate them for time worked before and after their assigned shifts. The City concedes that the pre- and post-shift time at work constitutes "time worked" under the FLSA, but counters that any compensation due the plaintiffs should be offset by the compensation paid them for their thirty-minute meal breaks, which the City argues are not compensable under the FLSA. The plaintiffs respond that they are in fact due compensation for the meal breaks, and that is the issue we now address.
 
 
 29
 The patrol officers and detectives, who are eligible for overtime, are currently compensated for eight hours of work per shift. They are permitted, during their eight hour shift, to take a thirty-minute meal break. If the meal break is not compensable time under the FLSA, then the City should be allowed to offset the amount it pays for the meal break against any amount it owes the plaintiffs for pre- and post-shift time at work.[6] See Cloutier v. City of Phenix City, 834 F.Supp. 366 (M.D.Ala.1993) (allowing the defendant city to offset a paid meal break against uncompensated pre- and post-shift work).
 
 
 30
 This Circuit has not yet addressed the compensability of meal breaks for section 7(k) law enforcement employees. Two separate regulations, employing similar but not identical language, purport to govern. See 29 C.F.R. Secs. 553.223(b) and 785.19(a) (1993). Section 785.19(a) defines "bona fide meal periods" for employees covered by the FLSA:
 
 
 31
 Bona fide meal periods. Bona fide meal periods are not worktime.... The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.
 
 
 32
 29 C.F.R. Sec. 785.19(a) (first emphasis in original). That provision is a general one. More specifically, section 553.223(b) deals with the compensability of meal breaks for law enforcement personnel covered by the section 7(k) partial overtime exemption, as are the plaintiffs in this case:
 
 
 33
 If a public agency elects to use the section 7(k) exemption, the public agency may, in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved from duty during the meal period, and all the other tests in Sec. 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.
 
 
 34
 29 C.F.R. Sec. 553.223(b) (emphasis added). Both sections establish complete relief from duty as the applicable standard. However, section 553.223(b), which applies to law enforcement employees, does not include the "any duties active or passive" language of section 785.19(a). Also, the two sections provide different examples of when employees are not completely relieved from duty.
 
 
 35
 We construed section 785.19(a), the meal period regulation of general application, in Kohlheim v. Glynn County, 915 F.2d 1473, 1477 & n. 20 (11th Cir.1990). In that case we considered whether the FLSA required a public employer to compensate firefighters for a meal period during which they "were required to remain at the station and were subject to emergency calls" and other "affirmative responsibilities." Id. at 1477. We affirmed the district court's conclusion that the meal period was compensable, "join[ing] the other circuits which have adopted the mealtime exclusion standards of Sec. 785.19 as an appropriate statement of the law." Id. at 1478 n. 20. We stated that "what matters in meal period cases is whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer." Id. at 1477 n. 19 (citing Wahl v. City of Wichita, 725 F.Supp. 1133, 1138-44 (D.Kan.1989)).
 
 
 36
 According to the City, sections 785.19(a) and 553.223(b) enunciate different standards. Because section 553.223(b) deals specifically with section 7(k) law enforcement personnel, the City argues that the Kohlheim decision, which interpreted only section 785.19(a), does not govern this case. Instead, the City argues, the meal breaks of section 7(k) law enforcement employees should be compensable only when spent predominantly for the benefit of their employer. In this case, the district court applied the predominant benefit test urged by the City, finding:
 
 
 37
 The evidence shows that during meal breaks patrol officers, detectives, and radio dispatchers can enjoy their meals (should they choose to eat) adequately and comfortably, that during such breaks they are not engaged in the performance of substantial duties, and that such time is not spen[t] predominantly for the benefit of defendant. Accordingly, the meal breaks do not constitute compensable time under the Act....
 
 
 38
 The predominant benefit test is not foreign to this Circuit's case law. See Birdwell v. City of Gadsden, 970 F.2d 802 (11th Cir.1992) (holding that time spent on-call by police detectives is not compensable under the FLSA because the time was not spent predominantly for the employer's benefit); Blum v. Great Lakes Carbon Corp., 418 F.2d 283, 284 (5th Cir.1969) (stating that one factor to be considered "[i]n determining whether idle time is compensable" is "whether the time is spent predominantly for the employer's or employees' benefit"), cert. denied, 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970). However, we have never before addressed whether we should apply the predominant benefit test to determine the compensability of meal breaks accorded to section 7(k) law enforcement employees.
 
 
 39
 We find merit in the City's argument that the predominant benefit test applies. Logically, section 553.223(b) would be superfluous if it did nothing more than reiterate the standard announced in section 785.19(a). The different examples given of when a meal is compensable indicate that a higher level of duty is required before meal breaks are compensable for section 7(k) law enforcement employees than for other types of employees. The fact that the regulation applicable to employees in general contains some broad language ("any duties whether active or passive") not found in the regulation applicable to law enforcement employees also supports our conclusion. Because Kohlheim did not involve law enforcement officers, that case turned solely on the Court's interpretation of section 785.19(a). The Kohlheim Court had no occasion to consider the interrelationship of sections 553.223(b) and 785.19(a). If we were to extend Kohlheim 's "real limitations" test to law enforcement officers, we would defeat the apparent regulatory intent to subject 7(k) law enforcement officers to a different standard for compensated meals.
 
 
 40
 Four of our sister circuits have addressed the compensability of meals for section 7(k) law enforcement employees. See Henson v. Pulaski County Sheriff Dept., 6 F.3d 531 (8th Cir.1993); Alexander v. City of Chicago, 994 F.2d 333 (7th Cir.1993); Armitage v. City of Emporia, 982 F.2d 430 (10th Cir.1992); Lamon v. City of Shawnee, 972 F.2d 1145 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993); Lee v. Coahoma County, 937 F.2d 220 (5th Cir.1991). The Seventh, Eighth, and Tenth Circuits have all concluded that the critical issue is whether the restrictions imposed by the employer on an officer's disposition of a meal break are such that the break is predominantly for the benefit of the employer. Alexander, 994 F.2d at 337; Henson, 6 F.3d at 534; Lamon, 972 F.2d at 1157. The Fifth Circuit addressed the compensability issue in Lee, 937 F.2d at 225 (5th Cir.1991). In that case, the court merely compared the facts before it with the two examples provided by section 553.223(b). Concluding that the facts in its case did not resemble those in either of the regulatory examples, the court held that the meal breaks were not compensable. Id. No circuit has yet adopted an interpretation of the regulations that favors the position of the plaintiffs in this case.
 
 
 41
 Both the Tenth Circuit in Lamon and the Seventh Circuit in Alexander considered the interplay between sections 553.223(b) and 785.19(a). The Tenth Circuit concluded:
 
 
 42
 That a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working. Instead, consistent with the language of Sec. 553.223(b) and with traditional principles underlying [the] FLSA, a law enforcement employee is completely relieved from duty during a meal period, for purposes of Sec. 553.223(b), when the employee's time is not spent predominantly for the benefit of the employer.... [A] police officer is entitled to compensation for meal periods if the officer's time or attention is taken up principally by official responsibilities that prevent the officer from comfortably and adequately passing the mealtime.
 
 
 43
 Lamon, 972 F.2d at 1157-58 (citations and footnotes omitted) (reversing a judgment based on a jury verdict for the plaintiff officers because a jury instruction "countenanced the misapprehension that the performance of any official duty, no matter how insignificant, during meal periods rendered the time compensable," id. at 1158). The Seventh Circuit followed Lamon and held: "[A] law enforcement employee is completely relieved from duty during a meal period 'when the employee's time is not spent predominantly for the benefit of the employer.' " Alexander, 994 F.2d at 337 (quoting Lamon, 972 F.2d at 1155, 1157).
 
 
 44
 As mentioned earlier, this Court applied the predominant benefit test in Birdwell v. City of Gadsden, 970 F.2d 802, 808 (11th Cir.1992), where we held that time spent on-call by the plaintiff detectives was not compensable under the FLSA because the "time was not used predominantly for the employer's benefit," notwithstanding the fact that the detectives were required to wear a beeper or leave a phone number where they could be reached. We see no reason to treat on-call time and meal breaks differently for section 7(k) purposes. We therefore follow the Seventh, Eighth, and Tenth Circuits, and adopt the predominant benefit test as the appropriate standard for determining whether a section 7(k) law enforcement employee's meal break is compensable time under the FLSA.[7]
 
 
 45
 In this case, the district court correctly applied the predominant benefit test. The City undoubtedly benefits from the restrictions it imposes on the plaintiffs' meal breaks, but the fact that the City benefits from the restrictions does not mean that the plaintiffs' meal breaks are predominantly for the City's benefit. The overwhelming testimony of the patrol officers and patrol lieutenants themselves is that they are free to spend their meal breaks in any way they wish so long as they remain in uniform, leave their radios on, and do not leave the jurisdiction. The detectives need simply leave a phone number where they can be reached in case of an emergency. The plaintiffs may return home, stop at the bank, pick up their dry cleaning, or run other personal errands.[8] In sum, the plaintiffs are able to "comfortably and adequately pass[ ] the mealtime." Lamon, 972 F.2d at 1158. No reasonable jury could find that the plaintiffs' meal periods generally are spent predominantly for the benefit of the City. Therefore, the district court correctly held that the meal periods are not compensable under the FLSA, and properly allowed the City to offset the meal break against the compensable pre- and post-shift time worked by the plaintiffs.[9]
 
 
 46
 There is evidence in the record that the plaintiffs are occasionally recalled to active service before they finish their meal breaks. There is also evidence that they are occasionally so busy that they are denied meal breaks. In those situations, the plaintiffs are entitled to compensation for the additional time that they are working for the City. See 29 C.F.R. Sec. 553.221(b) (1993) ("Compensable hours of work generally include ... [all] time during which the employee is suffered or permitted to work for the employer.").
 
 
 47
 E. THE PLAINTIFFS' STATE LAW BREACH OF CONTRACT CLAIM
 
 
 48
 The plaintiffs argue that the City of Talladega Personnel Systems Manual and Employee Handbook is part of their employment contract and that it entitles them to "a monthly salary or an hourly rate of pay for each job," and that "[b]y failing to compensate at the agreed hourly rate for (a) roll [call] time, and (b) postliminary work the Defendants breached the employment contract for which the Plaintiffs claim lost wages at the appropriate rate plus interest." The City has conceded that the pre- and post-shift time worked by the plaintiffs is compensable, but the City challenges the compensability of the plaintiffs' meal breaks. According to the City, the district court correctly ruled that the plaintiffs' state law contract claim is pre-empted by the FLSA. The City also argues that the district court ruled that the Handbook, assuming arguendo that it constitutes an employment contract, has no terms "requiring payment for roll call and post-shift work." Thus, the city concludes that even if the contract claim is not pre-empted by the FLSA, the plaintiffs cannot recover because the contract does not require that they be paid for pre- and post-shift time and, therefore, it has not been breached. For the sake of this discussion, we will assume, without deciding, that the Handbook is part of the plaintiffs' employment contract.
 
 According to the district court:
 
 49
 [T]he allegations in the complaint simply state a claim that plaintiffs have not been paid for "hours worked" during roll call and post-shift time. The determination of "hours worked" is clearly within the scope of the FLSA; thus the Act provides the exclusive remedy for plaintiffs on these claims and preempts these claims.
 
 
 50
 The district court's analysis is inconsistent with this Court's holding in APFU, 920 F.2d 800, 806 (11th Cir.1991). In APFU the plaintiffs' employment contract provided that holiday and relief days would be counted for overtime purposes, even though the FLSA does not require employers to do so. We affirmed the district court's award of compensation for holiday and relief days "pursuant to a breach of contract theory." Id. at 806. We concluded that "the City did not violate the FLSA, but violated the contract by not counting holiday and relief days." Id. APFU thus supports the proposition that an employer may contractually agree to compensate employees for time that is not mandatorily compensable under the FLSA. Id. at 806 & n. 7; cf. 29 C.F.R. Sec. 553.223(b) (1993) (stating that a public agency invoking the section 7(k) partial overtime exemption "may ... exclude meal time from hours worked" under certain circumstances (emphasis added)). Thus, the district court erred in holding that the FLSA pre-empts a state law contractual claim that seeks to recover wages for time that is compensable under the contract though not under the FLSA.
 
 
 51
 However, the Handbook in this case does not provide wage terms different from those provided by the FLSA, which it expressly incorporates. As the district court explained:
 
 
 52
 In the section entitled "Hours of Work," upon which plaintiffs rely, the Handbook states only that "[i]n departments where twenty-four (24) hour service is provided seven (7) days per week, the number of regular hours worked will be established in accordance with the [FLSA] as amended. See Handbook at p. 55.... Similarly, the Handbook provides that overtime will be determined and paid in accordance with the FLSA. Id.
 
 
 53
 Because the Handbook expressly incorporates the FLSA rules on hours worked and determination of overtime, the plaintiffs' contractual rights are no greater than their rights under the FLSA. We agree with the district court that the parties' intent, as reflected in the Handbook, was to be bound by the terms of the FLSA, nothing more. There is no evidence to support a contrary interpretation.
 
 
 54
 Our contractual interpretation requires reinstatement of the plaintiffs' contract claim. Our affirmance of the district court's holding that the meal breaks are not compensable means that whether the City has violated the FLSA will depend upon an examination, as to each work period, of each plaintiffs' meal breaks and pre- and post-shift work. If a violation of the FLSA has occurred, then a violation of the contract, which incorporates the FLSA, will have occurred as well. Because we cannot say that there has been no such violation, the district court's entry of summary judgment is due to be reversed. Of course, the plaintiffs may not recover twice for the same violation; the breach of contract claim survives merely as an alternative legal theory to redress any wrong that may have been done them.
 
 III. CONCLUSION
 
 55
 We REVERSE the district court's entry of summary judgment against the lieutenants, because they are not salaried employees within the meaning of the regulations, and therefore they cannot be denied overtime under the executive exemption of 29 U.S.C.A. Sec. 213(a)(1) (1965 & Supp.1994). We AFFIRM the district court's entry of summary judgment for the City with respect to the jailers' and detectives' claims that they are not subject to the section 7(k) partial overtime exemption. We also AFFIRM the district court's ruling that the FLSA does not require the City to compensate the plaintiffs for their meal breaks and that the City may, therefore, offset the wages it pays for the meal breaks against the wages it owes for the pre- and post-shift time worked by the plaintiffs. We REVERSE the district court's entry of summary judgment for the City on the contract claim because the FLSA does not pre-empt the contract claim, the City's Employee Handbook promises that employees will be paid in accordance with the FLSA, and the plaintiffs may have suffered FLSA violations, depending upon the specific facts relating to each plaintiff's pre- and post-shift work and meal breaks.
 
 
 56
 The case is REMANDED for further proceedings consistent with this opinion.
 
 
 57
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 Honorable W.B. Hand, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 The original plaintiffs also included a fifth group, composed of dispatchers. The dispatchers contended that they were not engaged in law enforcement activities and could not be classified as partially exempt from overtime under 29 U.S.C.A. Sec. 207(k) (Supp.1994). The district court agreed and granted them summary judgment. The City has not appealed that ruling, and the dispatchers are not involved in any aspect of this appeal
 
 
 [2]
 Pursuant to an amendment made after this lawsuit was filed, deductions may also be made from a public employee's salary when the employee is absent for less than one day for personal reasons or sickness if the deduction is made in accordance with an accrued leave program as described in 29 C.F.R. Sec. 541.5d (1993)
 
 
 [3]
 We emphasize again that the validity of the regulation as it applies to law enforcement employees is not a question presented to us, nor is it one foreclosed by our decision
 
 
 [4]
 We therefore need not determine whether Lt. Haney's alleged use of force against an inmate constitutes an infraction of a safety rule of major significance within the meaning of section 541.118(a)(5)
 
 
 [5]
 This assertion obviously does not apply to the detective lieutenant, who, until now, has not received any overtime pay at all because he has been classified--improperly, as we have held--as an exempt executive employee
 
 
 [6]
 Because the district court concluded that the lieutenants were exempt from overtime under the FLSA, it did not make any findings as to the amount of pre- and post-shift work performed by the lieutenants, or as to the nature or length of their meal break. However, the same analysis will govern the lieutenants' claim for additional compensation
 
 
 [7]
 Although the Seventh, Eighth, and Tenth Circuits have all concluded that the predominant benefit test applies, they have relied on different rationales in reaching that same result. The Seventh and Tenth Circuits have interpreted the regulations as providing the predominant benefit test. The Eighth Circuit, however, concluded that the regulations do not establish the predominant benefit test, but adopted that test nonetheless, relying on Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). See Henson, 6 F.3d at 534-35. We reach the same result as the Seventh, Eighth, and Tenth Circuits, but do so for the reasons announced by the Seventh and Tenth Circuits
 
 
 [8]
 The plaintiffs complain that the patrol officers and lieutenant who work the night shift have limited options in terms of open restaurants and other facilities. This is entirely beside the point. These limitations are not of the City's doing; even if the City imposed no restrictions whatsoever the night-shift officers would find their options just as limited. Moreover, night-shift officers receive a "shift differential" to compensate them for the added inconvenience of working at night
 
 
 [9]
 There is evidence in the record that the lieutenants' pre- and post-shift time may total more than thirty minutes per day. If that is true, and if the lieutenants are permitted only a thirty-minute meal break, then they may be entitled to additional compensation notwithstanding our holding that the plaintiffs' meal breaks are not compensable. In light of our holding, in part II.A, that the lieutenants are not exempt from overtime, findings as to the amount of pre- and post-shift time worked by the lieutenants, and as to the length of their meal breaks, are necessary to determine the extent of the lieutenants' recovery, if any. On remand, the district court should determine whether the lieutenants are entitled to any additional compensation because of their pre- and post-shift time at work