Wayne **ARRINGTON**, et al., Plaintiffs,

v.

**CITY OF MACON**, Defendant.

No. 5:91–cv–182–4 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 7, 1997.

---

Bonnie Kirkland Cole, Robert S. Slocumb, Macon, GA, for Plaintiffs.

Loretta L. Pinkston, Susan S. Cole, Charles E. Cox, Jr., Macon, GA, for Defendant.

## ORDER

OWENS, District Judge.

Plaintiffs have filed a motion for partial summary judgment concerning the issue of whether defendant City of Macon has satisfied the "salary test" regulations established by the Department of Labor ("DOL") for determining whether an employee may be classified as exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### I. Summary judgment standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Irby v. Bittick, 44 F.3d 949, 953 (11th Cir. 1995). Under the first element, the issue must be genuine, and the factual dispute must be material to the outcome of the litigation. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. The second element—that the movant be entitled to judgment as a matter of law— is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in FED. R. CIV. P. 56(c), genuine issues of material fact necessitating a trial. Celotex Corp., 477 U.S. at 324, 106 S.Ct. at 2553.

### II. Discussion

Plaintiffs are thirty-nine police officers employed by the City of Macon who are classi-

fied by the City as exempt from overtime pay requirements under the provisions of 29 U.S.C. § 213(a)(1965 & Supp.1997).[1] Title 29 U.S.C. § 207(a)(1) requires, generally, that employees be paid at one and one-half times their regular rate for hours worked in excess of forty per week. However, public employers are not required to pay overtime to employees engaged in law enforcement until the employee has worked more than 171 hours— or approximately 6.11 hours per day—in a 28–day work period. 29 U.S.C. § 207(k)(1965 & Supp.1997); 29 C.F.R. § 553.230(c)(1996). In *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court held that the provisions of the FLSA may constitutionally be applied to public-sector employees.

All employees who are employed in a bona fide executive, administrative or professional capacity are exempt from the overtime requirements of the FLSA. 29 U.S.C. § 213(a)(1). 29 C.F.R. § 541.0 generally describes the terms executive, administrative and professional, and the following sections set out the minimum salaries required for employees to be considered compensated on a salary basis. To maintain exempt status the employee must satisfy both salary tests and duties tests which are set forth at 29 C.F.R. § 541.118. Plaintiffs allege that they are improperly classified as exempt employees under the salary test provisions of the regulations; the duties tests of the regulations are not at issue in this case.

An employee will be considered to be paid "on a salary basis" if "he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount which constitutes all or part of his compensation, which amount is not subject to reduction because of variations of the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). In order to qualify for exempt status the employee must receive his full salary for any week in which he performs any work, al-though he need not be paid for any week in which no work is performed. *Id.* An employee will not be considered to be paid on salary basis if deductions are made from his compensation because work is not available. 29 C.F.R. § 541.118(a)(1). However, deductions may be made for absences of a day or more for personal reasons other than sickness or accident, or for absences of a day or more caused by sickness or disability if made in accordance with a bona fide sickness and disability plan. 29 C.F.R. §§ 541.118(a)(2) & (3). Under the "public employee" exception of 29 C.F.R. § 541.5d exempt status will not be destroyed for deductions for absences of less than a day for personal reasons or sickness if made in accordance with an accrued leave system. Exempt status is also consistent with the employee being penalized "in good faith for infractions of safety rules of major significance," which include only those rules "relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines." 29 C.F.R. § 118(a)(5).

The plaintiff police officers allege that the City of Macon has violated the salary test in several respects, thereby destroying their exempt status and entitling them to receive overtime pay. They rely primarily upon the City's imposition of disciplinary sanctions for reasons other than infractions of safety rules of major significance. The City does not dispute the fact that five plaintiffs were suspended without pay for full work weeks and six plaintiffs were suspended for less than full work weeks, although the exact dates of some of the suspensions are in dispute: Gary Adams was suspended for ten days (two work weeks) in June of 1994 for violation of a courtesy rule; Brady Fields was suspended for twenty-five days (five work weeks) from February 13, 1994, to March 19, 1994[2]; Charles Reynolds was suspended for fifty days (ten work weeks) from February 13, 1994, to April 23, 1994,[3] for alleged violations

---

1. Four of the officers, Lieutenants Brenda Davis, Lynn Harbuck, Charles Reynolds, and Johnest Straws, are plaintiffs in Civil Action No. 93–134–2–MAC(WDO).

2. The reasons for Fields' suspension do not appear in the record.

3. Reynolds states in his affidavit that the correct dates of his fifty-day suspension were from February 11, 1994, to May 23, 1994, and that after appealing the suspension it was reduced to twenty-five days and the City reimbursed him for the remaining twenty-five day period. It is noted that the period of time from February 11 to May 23 comprises more than fifty days.

of sexual harassment and unbecoming conduct; Cleveland Robinson was suspended twice for twenty-five days (totaling ten work weeks) from February 13, 1994, to April 23, 1994,[4] for allegations of sexual harassment and unbecoming conduct; and Terry Timley was suspended for ten days (two work weeks) from April 23, 1990, to May 4, 1990, for alleged unbecoming conduct in his attitude toward a doctor at the Medical Center.

In addition, plaintiff Robert Arrington was suspended for one day effective June 6, 1989, for violation of sick leave policies. Wayne Arrington was suspended for twenty days from May 9, 1989, to June 3, 1989, for various infractions involving off-duty employment and use of City vehicles, the suspension resulting in his not working at all for two work weeks but working for 1.5 hours one work week and two hours another work week and being paid only for that time. Carl Gregory was suspended for ten days effective April 27, 1989, for various infractions involving a part-time job, resulting in his receiving less than full salary in two work weeks. M.R. Jones was suspended for one day on November 6, 1990, for failure to retain custody of a juvenile brought in on charges of auto theft. Glenwood McMullen was suspended on November 9 and 10, 1992, February 3, 11, and 16 of 1993, August 26, 1993, September 30, 1993, and April 14 and 19 of 1994, for failing to furnish an off-duty employment form, insubordination in a counseling section, and improperly seizing property. He was also suspended on April 14 and 19 of 1994 for failing to forward written statements taken during an investigation through the chain of command. Finally, William Slye was suspended one day on August 9, 1990, for failing to properly follow up an accident report. It is not argued that the suspensions imposed by the City involved violations of safety rules of major significance.

■ In *Avery v. City of Talladega, Ala.*, 24 F.3d 1337 (11th Cir.1994), the Court of Appeals discussed the application of § 541.118(a)(5) to the City of Talladega's suspension of an officer without pay for leaving the scene of an apparent suicide. Citing *Atlanta Professional Firefighters Union v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir.1991), the *Avery* court followed the principle of construing overtime exemptions narrowly against the employer. The Court held that Atlanta's suspension of the officer violated the FLSA because however important it may have been to protect the public by having police officers present at a crime scene, the suspension did not arise from an infraction of a safety rule of major significance as defined by § 541.118(a)(5). *Avery,* 24 F.3d at 1342. The suspension was held to have destroyed not only the affected officer's salaried status but also that of the other lieutenants. The court reasoned that to hold otherwise "would lead to an irrational result, because it would favor employees who are disciplined for breaking the rules—and thus become eligible for overtime—over employees who respect those same rules." *Id.*

Although the City of Macon does not deny that the eleven officers were disciplined for reasons other than major safety infractions, it cites cases from other jurisdictions which bolster its argument that the salary test is invalid in part or in its entirety, particularly as applied to local enforcement officers. *See Service Employees International Union, Local 102 v. County of San Diego,* 60 F.3d 1346, 1353–54 (9th Cir.1994); *Stewart v. City and County of San Francisco,* 834 F.Supp. 1233 (N.D.Cal.1993), *aff'd,* 69 F.3d 545 (9th Cir. 1995); *Jackson v. Commonwealth of Kentucky,* 892 F.Supp. 923, 927 (E.D.Ky.1995). The City further contends that the September 6, 1991, Interim Final Rule which altered the salary test of § 541.118 is invalid because the DOL did not comply with the notice and comment provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and failed to set forth good cause for not doing so.[5] The City further argues that the

---

4. Robinson also indicates that the dates of the fifty-day suspension were from February 11, 1994, to May 23, 1994.

5. Following the Supreme Court's ruling in *Garcia,* and prior to the enactment of 29 C.F.R. § 541.5d, the Department of Labor on September 6, 1991, issued an Interim Final Rule which replaced the no-docking rule for public employees. Because of its perception of the need to prevent additional liability to state and local governments, the DOL made the Rule immediately effective without prior notice and comment. 29 C.F.R. § 541.5d is the codified version of the Rule containing slight modifications.

salary test as it existed before 1991, the Interim Final Rule, and the Final Rule are all invalid because the rule in all its forms significantly alters the balance of powers between state and federal governments when it is not necessary to do so to achieve the goals of Congress.

■ This court has previously considered the City's arguments and has declined to find the salary test regulations inapplicable to public employers. *See Arrington v. City of Macon,* 864 F.Supp. 1345 (M.D.Ga.1994). As stated in that opinion, the Eleventh Circuit has analyzed the salary test in the context of public employment on at least two occasions. *See Avery v. City of Talladega* and *Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta.* Moreover, in *Auer v. Robbins,* —— U.S. ——, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court refused to consider the argument that the failure of the Department of Labor ("DOL") to reconsider the disciplinary-deduction portion of the salary basis test as it applied to public employees after the *Garcia* decision was handed down was arbitrary and capricious in violation of the APA.[6] Thus, this court reiterates its earlier ruling with respect to the applicability of the salary test regulations to public employers. The ruling in *Avery* compels the conclusion in the instant case that the suspension of the eleven plaintiffs for reasons other than safety rules of major significance made all the plaintiffs ineligible for the executive, administrative, or professional employee exemptions provided in § 213(a)(1).

Plaintiffs also contend that factors other than the suspensions indicate that they were hourly employees rather than exempt employees. They argue that because exempt employees are required to keep track of their time worked and turn in time sheets from which the amount of their paycheck is determined, the City has demonstrated an intention to pay them on an hourly rather than a salaried basis. The City does not dispute the fact that exempt employees' hourly rate and hours worked are factored into determining the amount of their paychecks. It maintains, however, that the hourly rate (which is determined by dividing the normal hours worked into the employee's annual salary), is used in order to compute pay for work performed beyond forty hours per week.

■ Requiring exempt employees to keep time sheets does not in itself defeat exempt status in the case of public employees. Such policies are not inconsistent with the FLSA in that they are "premised on the concept of public accountability—that governmental employees should not be paid for time not worked, and that there is a need to be accountable to the taxpayers for the expenditure of public funds." *Kuchinskas v. Broward County,* 840 F.Supp. 1548, 1556 (S.D.Fla.1993), quoting 56 Fed.Reg. 45,824, 45,825 (1991). Furthermore, a policy of paying additional straight-time compensation for overtime work does not in itself destroy exempt status. With respect to the City's calculation of overtime pay, plaintiffs rely on *Brock v. Claridge Hotel and Casino,* 846 F.2d 180 (3d Cir.1988), *cert. denied,* 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988), in which the Third Circuit held that hotel and casino supervisors, who received a minimum guarantee of $250 per week but were consistently paid much higher compensation calculated according to the number of hours worked, could not properly be classified as exempt employees because the employer's method of computing salary was inconsistent with salary payment and with executive employment. But in *York v. Wichita Falls, Texas,* 944 F.2d 236, 241 (5th Cir.1991), the Fifth Circuit Court of Appeals held that exempt status is not inconsistent with paying an hourly rate for each hour an employee

---

**6.** The respondents in *Auer* argued that "it was 'arbitrary' and 'capricious' not to conduct amendatory rulemaking," rather than that the disciplinary-deduction rule was substantively unlawful or procedurally deficient. —— U.S. at ——, 117 S.Ct. at 910. The Supreme Court stated: "The proper procedure for pursuit of respondents' grievance is set forth explicitly in the APA: a petition to the agency for rulemaking, § 553(e), denial of which must be justified by a statement of reasons, § 555(e), and can be appealed to the courts, §§ 702, 706." The Supreme Court further indicated that "[a] court may certainly be asked by parties in respondents' position to disregard an agency regulation that is contrary to the substantive requirements of the law, or one that appears on the public record to have been issued in violation of procedural prerequisites," *Id.* This court declines to take this step in the absence of authority from the Eleventh Circuit.

works beyond his regular schedule. *See also Hartman v. Arlington County,* 720 F.Supp. 1227, 1229 (E.D.Va.1989), *aff'd,* 903 F.2d 290 (4th Cir.1990)(holding such practice to be expressly permitted by § 541.118(b)). In *Hilbert v. District of Columbia,* 23 F.3d 429, 431 (D.C.Cir.1994) the Court held:

> Even before September 6, 1991 [the date the Initial Final Rule was enacted], however, there were difficulties with automatic denial of executive status for employees receiving hourly overtime. The Secretary's regulations focus chiefly on whether an employee's pay is subject to impermissible deductions, not on how any extra pay is computed. According to the regulations, an employee who receives, every two weeks, a "predetermined amount" (his biweekly base pay) that "constitut[es] ... part of his compensation" and is subject only to permissible deductions "will be considered to be paid 'on a salary basis'". 29 C.F.R. § 541.118(a). Indeed, in a subsection headed "Minimum guarantee plus extras", the regulations specifically note that "additional compensation besides the salary is not inconsistent with the salary basis of payment." *Id.* § 541.118(b).

The reasoning of *York, Hartman,* and *Hilbert* provide persuasive authority that the City of Macon's practice of paying hourly overtime for hours worked in excess of the eighty-hour minimum for a two-week pay period does not defeat exempt status under the FLSA. The public policy which permits the requirement that exempt employees keep track of their hours logically extends to justifying the payment of additional compensation by reference to additional hours worked.

Plaintiffs also point to additional incidences of deductions from salaried officers' paychecks which in their view indicate that the City adhered to a policy of making deductions inconsistent with salaried status. Following the decision of the Ninth Circuit in *Abshire v. County of Kern,* 908 F.2d 483, 484 (9th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848, some courts held that whether impermissible deductions have ever actually been taken is irrelevant to the determination whether an employer has

violated the FLSA and that it is sufficient for a finding of liability that an official policy existed which would have permitted it to do so. *See, e.g., Bankston v. Illinois,* 60 F.3d 1249, 1253 (7th Cir.1995); *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 615 (2d Cir.1991), *cert. denied,* 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992), and additional cases cited therein. In *Atlanta Professional Firefighters,* 920 F.2d at 805, the Eleventh Circuit took the contrary position that only actual rather than theoretical deductions can invalidate exempt status based on the salary test.

The Supreme Court, however, declined in *Auer* to hold that in all cases " '[t]he mere possibility of an improper deduction in pay does not defeat an employee's salaried status' if no practice of making deductions exists." *Auer,* —— U.S. at ——, 117 S.Ct. at 910. Instead, the Court adopted the position of the Secretary of Labor which interpreted the salary-basis test "to deny exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.' " *Id.* at ——, 117 S.Ct. at 911. This standard will be met "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Id.* The requirement that there be a significant likelihood of deductions being applied to salaried personnel "avoids the imposition of massive and unanticipated overtime liability ... in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against salaried employees." *Id.* The employer's policy in *Auer* did not satisfy the Secretary's standard, however, because it was not clear whether the deductions in pay established as penalties therein applied to exempt employees, nor was a one-time deduction in a sergeant's pay under unusual circumstances[7] sufficient to establish the likelihood that disciplinary deductions in pay would be applied to all exempt employees. *Id.*

7. The employee had voluntarily agreed to a pay reduction in lieu of being terminated. 489 U.S. at 34–35, 109 S.Ct. at 910.

■ Plaintiffs in the instant case contend that they have established that the City not only had an actual practice of making disciplinary and other deductions from exempt employees' paychecks but also that the City followed an employment policy which created a significant likelihood of such deductions being made. The City states that with only a few exceptions no officer since May of 1988 has received less than his full salary for having insufficient leave to cover absence for personal reasons or disability. The exceptions pointed out by plaintiffs include deductions made from the pay of Captain William Slye, Willie Billue, and Lynn Harbuck for instances in which these officers did not have sufficient leave time or sick time accrued.

In February of 1989 Slye was paid for 2.0 hours of sick leave instead of 2.5 hours; the City indicates that the discrepancy was inadvertent and has tendered reimbursement to Slye for the half hour deficiency. During the pay period from June 4, 1995, to June 17, 1995, Willie Billue (not a plaintiff herein), worked only seventy-eight hours rather than the customary eighty hours and received a check which was calculated at an hourly rate of seventy-eight hours rather than eighty hours. The City claims that Billue chose to receive less pay rather than to use his accrued vacation time for the two hours which he took off for personal reasons, which is permissible under § 541.5d. Plaintiffs do not allege that Billue has a claim against the City but use his example to demonstrate that the City's policy allows it to pay exempt employees for less than a forty-hour week. In the case of Lynn Harbuck, her affidavit maintains that she was docked thirty-seven hours because she did not have enough accrued sick leave to cover time taken off for surgery. The City admits that Ms. Harbuck was not paid for the first week of her payroll period because she performed no work for that week and had a negative sick-leave balance, but states that during the second week of the pay period she worked forty-three hours and was paid for forty-three hours. The City claims that its action with respect to Ms. Harbuck was permissible based on 29 C.F.R. § 541.118(a), which permits an employee not to be paid for any work week in which he performs no work. However, the City has defined a work week as consisting of forty hours. By this definition Ms. Harbuck appears to have been docked for less than a full work week.

Plaintiffs claim that their lack of salaried status is further demonstrated by the City's policy of docking pay for fractions of days. In April of 1994 Lieutenant Johnest Straws, an exempt officer, received a letter of reprimand for being tardy. The affidavit of Captain Joe Stiles indicates that the City has a policy of suspending without pay exempt officers for periods of one and three days for minor disciplinary violations such as failure to appear in court and tardiness. While not denying that this policy previously existed, the City maintains that since the end of November 1994 it has been the policy of the Macon Police Department that exempt officers are not subjected to disciplinary suspensions without pay for less than a work week other than for infractions of safety rules of major significance. Plaintiffs also show that on July 6, 1991, Captain Henry Gibson's pay was docked three-tenths of an hour because he did not have enough accrued leave to cover the time taken, even though he requested that he be advanced leave time to prevent the deduction. Although the City does not deny that Gibson's pay was reduced by three-tenths of an hour, it points out that even after the three-tenths hour reduction Gibson was not paid less than his predetermined salary and in fact was paid for 81.7 hours rather than for the ordinary eighty-hour two-week work period. In effect, the City takes the position that the deduction Gibson received reflects a payment for less overtime pay rather than a deduction from regular salary.

■ The deductions from the salaries of Slye, Harbuck, and Gibson appear to be technically in violation of the requirements of 29 C.F.R. § 541.118 and are sufficient in the court's view to show, along with the City's policy concerning tardiness, that as a practical matter deductions in pay are significantly likely on occasion to be invoked against salaried employees. The City nevertheless urges the court to hold that to the extent it is found to have made improper deductions for disciplinary reasons other than violations of major safety rules or to have violated other

FLSA regulations, or to the extent the City is found to follow a policy of allowing such deductions, it is entitled to preserve plaintiffs' exempt status by taking remedial actions. 29 C.F.R. § 541.118(a)(6) provides a method by which under certain circumstances employers who have violated the salary test regulations may correct or minimize their failure to abide by the regulations. This section, commonly referred to as the "window of correction," provides:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

The Supreme Court in *Auer* held that because the DOL did not interpret the regulation to require immediate reimbursement upon the discovery that an improper deduction had been made, the respondents were entitled to preserve the exempt status of the officer from whose paycheck the one-time impermissible deduction had been made by complying with § 541.118(a)(6). *Auer,* —— U.S. at ——, 117 S.Ct. at 912. The Court construed the terms "inadverten[ce]" and "made for reasons other than lack of work" as set out on the regulation to be "alternative grounds permitting corrective action." *Id.* This interpretation is consistent with the earlier holding of this Circuit in *Lee v. Flightsafety Services Corp.,* 20 F.3d 428 (11th Cir. 1994). Thus, the fact that an employer intentionally makes a deduction from an exempt employee's paycheck which is impermissible under the FLSA does not defeat its right to utilize the window of correction so long as the deduction was made for reasons other than the lack of available work.

■ The *Auer* decision addressed only the applicability of the window of correction to a situation where the impermissible deduction was actually made. Because the language of the regulation did not address the timing of reimbursement and because the DOL did not interpret the regulation to require immediate payment, the respondents were entitled to preserve the exempt status of the officer by complying with the regulation. *Auer,* —— U.S. at ——, 117 S. Ct. at 912. The Court determined that the regulation did not limit the time for which the window of correction was available, thereby permitting the employer to preserve the exempt status of the employee even after suit was filed. Consistent with this ruling, the City of Macon is clearly entitled to the benefits of § 541.118(a)(6) with respect to the actual deductions it has made from the paychecks of exempt employees.

■ Plaintiffs argue, nevertheless, that the City is not entitled to utilize the window of correction to correct an established policy. The *Auer* court did not directly address whether the window of correction was available to correct deductions made pursuant to such a policy. Although plaintiffs have cited authority holding that § 541.118(a)(6) is not applicable where the governmental authority has a settled policy which violates the FLSA, the law in this Circuit holds otherwise. In *Kuchinskas v. Broward County,* 840 F.Supp. 1548 (S.D.Fla.1993), *aff'd,* 86 F.3d 1168 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997), *reh. denied,* —— U.S. ——, 117 S.Ct. 1461, 137 L.Ed.2d 565 (1997), the district court held:

> [T]he "granting of windfall awards of across-the-board retroactive overtime payments to public employees who never had any actual deductions made in their salaries, along with employees who rarely had such deductions, but all of whom would be entitled to substantial back pay under *Abshire* simply because their salaries were theoretically 'subject to' the possibility of docking" [is] fundamentally unfair and inequitable.
>
> . . .

Thus the Court finds that the County has corrected any previous violations of the

FLSA by taking curative steps in expressly amending its personnel policies and reimbursing the affected employees for partial-day deductions.

*Kuchinskas,* 840 F.Supp. at 1557–58. *Kuchinskas* relied on the holding in *Atlanta Professional Firefighters,* 920 F.2d at 805, that only actual deductions can invalidate an employee's exempt status. However, the holding in *Auer* that a policy making it significantly likely that such deductions would occur would also violate exempt status does not invalidate the *Kuchinskas* court's reasoning. Based upon the provisions of § 541.11 8(a)(6), the City of Macon is entitled to correct its violations by reimbursing the employees from whose paychecks deductions were improperly made and by amending its personnel policies to clearly reflect its intention to comply in the future with all the provisions of the FLSA.

### III. Conclusion

In summary, the Court finds as follows:

(1) That the disciplinary deductions from the paychecks of the eleven exempt officers violated the provisions of the Fair Labor Standards Act with respect to all such employees for the week or weeks in which such deductions were made;

(2) That the City of Macon is entitled to preserve plaintiffs' exempt status by reimbursing the affected officers in accordance with § 541.118(a)(6);

(3) That the City's practices of making partial-week or partial-day deductions from exempt employees' paychecks, as well as its stated policy with respect to tardiness, establishes that plaintiffs are covered by a settled policy permitting disciplinary or other deductions in pay of exempt employees as a practical matter.

(4) That the City is entitled to preserve the plaintiffs' exempt status with respect to its established policy by reimbursing any affected employees in accordance with § 541.118(a)(6) and by expressly amending its personnel policy to clearly reflect that salaried employees are not subject to impermissible disciplinary or other deductions in pay.

In accordance with these conclusions, the plaintiffs' motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART.**