ATLANTA PROFESSIONAL FIRE-FIGHTERS UNION, LOCAL 134; Larry R. Atchley; Curley D. Davis; David A. McLane; Thomas C. Doyle; David W. Taylor; Dennis L. Gray and Carlton S. Hardin, Individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

CITY OF ATLANTA; George Napper, in his official capacity as Commissioner of the Department of Public Safety; and William H. Hamer, in his official capacity as Fire Chief, Bureau of Fire Services, Defendants–Appellees.

No. 89–8671.

United States Court of Appeals, Eleventh Circuit.

Jan. 7, 1991.

A. Lee Parks, Meals Kirwan Goger Winter & Parks, Atlanta, Ga., for plaintiffs-appellants.

David R. Blum, Marva Jones Brooks, Office of Attorney for City of Atlanta, Atlanta, Ga., for defendants-appellees.

Before HATCHETT and ANDERSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this Fair Labor Standards Act case, we affirm the district court's ruling that the city of Atlanta properly applied the Act to captains, lieutenants, and firefighters, in its Bureau of Fire Services.

On February 19, 1986, the Supreme Court announced in *Garcia v. San Antonio Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), that the overtime provisions of the Fair Labor Standards Act ("FLSA") were applicable to municipalities. Prior to that time, the city of Atlanta (the "City") treated firefighters employed in its Bureau of Fire Services ("BFS") as quasi-salaried employees in that it paid them a fixed sum bi-weekly, which was subject to adjustment for unexcused absences or for any extra work during the period.[1] The City reduced the fixed bi-weekly amount if a firefighter had unexcused absences and increased the amount if

---

1. Unexcused time includes absences which are not properly chargeable to sick leave, allowable vacation, military leave, allowable compensable holiday leave (nine days per year), injury on the job time, or jury duty.

a firefighter performed extra work. The City paid the firefighters compensation for extra work on a "straight time" rather than a "time and a half" basis.

The firefighters are divided into three rotation groups—groups "A," "B," and "C." The BFS employed a three-day rotation cycle whereby a firefighter from each group worked one "twenty-four hour day" followed by two days off. Because it is mathematically impossible to schedule the three groups to an equal number of shifts during the twenty-eight work days in a bi-weekly pay period, one group of firefighters worked ten days during a pay period while the other two groups worked nine days.[2]

Following the Supreme Court's announcement in *Garcia* that the statutory provisions of the FLSA applied to municipalities, the City realized that it would have to change its quasi-salaried system. The FLSA required that, except as otherwise provided, employees who worked in excess of a certain number of hours be compensated for the extra hours ("overtime") at a rate not less than one and one-half times the regular rate. *See generally* 29 U.S.C.A. § 207. The specific provision governing the firefighters requires that the City pay overtime to the firefighters where, in a work period of 28 consecutive days, the time worked exceeds the lesser of 216 hours or a number of hours established by the Secretary of Labor as being the average number of hours similar employees work in 28 day tours of duty. *See* 29 U.S.C. § 207(k). On November 14, 1985, Congress enacted a "grace period" whereby municipalities were permitted to delay implementation of the FLSA until April 15, 1986. *See* 29 U.S.C. § 216 note.

In attempting to comply with the FLSA provisions, the City formulated a plan which allowed firefighters to receive one "relief-day" per pay cycle. Under this plan, firefighters who were scheduled to work 240 hours (10 days) in a 28–day cycle were scheduled to work 216 hours. Firefighters who were scheduled to work 216 hours (9 days) were scheduled to work 192 hours. Despite the reduction in their work hours, the firefighters continued to receive the same bi-weekly pay. Between November 25, 1985, when the City implemented the new plan, and April 15, 1986, the City continued its custom of paying "straight time" when a firefighter worked extra hours beyond the regularly scheduled hours.

According to the City, on April 15, 1986, it was unable to comply with the overtime provisions of the FLSA due to problems with their computerized pay system. On that date, Chief William Haymer of BFS sent out a memorandum informing firefighters that instead of receiving the 24–hour relief day as had been customary for the preceding 5 months, they would receive a 12–hour relief day. This meant that firefighters scheduled to work 240 hours (10 days) during a 28–day cycle were scheduled to work 228 hours instead of 216 hours; firefighters who were scheduled for 216 hours (9 days) during the 28–day cycle were scheduled to work 204 hours. This system continued in effect until September 3, 1986.

On September 3, 1986, the City converted to an hourly system of pay for firefighters, with time and a half being paid once a 212 hour threshold was reached in each 28–day pay cycle. The City determined that, in order to ascertain each firefighter's hourly rate of pay, it would divide the firefighter's annual salary by 2,756 hours.[3] In September, 1986, the City notified the firefighters that it would pay, on a retroactive basis, any overtime pay earned during the period

---

2. For example, during the first twenty-eight day pay cycle, group "A" firefighters were scheduled to work ten 24-hour shifts while groups "B" and "C" firefighters were scheduled to work nine 24-hour shifts. In the next twenty-eight day pay cycle, group "B" firefighters were scheduled to work ten 24-hour shifts, while groups "A" and "C" firefighters were scheduled to work nine 24-hour day shifts.

3. Two thousand seven hundred and fifty-six hours is an average work week of 53 hours (52 × 53 = 2,756). The average hours roughly equate to a year's worth of 24–hour shifts with 2 days in between each shift but less a 12 hour relief day every 28 days.

April 15 to September 3, 1986. The City announced that in making computations for this period, it would determine an hourly rate for each firefighter, and this rate would be applied to compensable time.[4] Under this scheme, holidays not actually worked and "relief" days would be excluded from "compensable time" and would not be counted in determining whether the 212 hour overtime threshold had been met. The City also decided that those firefighters who had worked less than 212 hours in a given 28–day period between April 15, 1986, and September 3, 1986, would suffer a retroactive decrease in pay because they had not worked the number of hours for which they had been paid.

The City recalculated both base pay and overtime pay for each 28 day cycle during the period April 15 to September 3, 1986. Thereafter, the City mailed checks to those employees who received less pay than they were entitled to under the new method of calculating overtime. Conversely, those employees who had been paid more than they were entitled to under the new method of calculation had to repay the excess to the City.[5]

## PROCEDURAL HISTORY

The Atlanta Professional Firefighters Union, Local 134, (the "Union") instituted this class action lawsuit on behalf of the firefighters, lieutenants and captains in federal district court, pursuant to 29 U.S.C. § 216(b). The Union alleged that (1) the City had violated the FLSA by failing to pay overtime to firefighters during the period April 15, 1986, to September 3, 1986; (2) the lieutenants and captains were entitled to overtime under the provisions of the Act; and (3) the City had intentionally sought to circumvent the provisions of the Act. The Union sought liquidated dam-

ages, attorneys fees, and other equitable relief.

After the Union and the City submitted motions for summary judgment, the district court granted partial summary judgment in favor of the Union, concluding that lieutenants were not exempt from the overtime requirements of the FLSA. The district court also awarded attorneys fees to the Union, but only to the extent that fees were earned on the lieutenant exemption issue.

The district court also granted partial summary judgment in favor of the City. The district court concluded that (1) captains were exempt from the overtime requirements of the FLSA, (2) the City did not err in computing the firefighters' retroactive award of overtime, (3) liquidated damages were not appropriate because the City had established a good faith reason for deciding not to pay overtime to lieutenants, and (4) the claims of office workers in the BFS were not properly before the court.

## CONTENTIONS OF THE PARTIES

The Union contends that the district court erred when it concluded that captains are exempt from the overtime requirements of the FLSA. Additionally, the Union contends that the City violated the FLSA by (1) incorrectly computing the amount of overtime payable to the firefighters, and (2) failing to pay firefighters overtime on a timely basis. Finally, the Union contends that the district court erred by concluding that the employees who worked forty-hour weeks could not obtain relief in this class action suit.

The City contends that the district court did not err in its rulings.

4. "Time" was defined to include actual hours worked, sick leave, vacation leave, military duty, on-the-job injury time, and jury duty.

5. In determining whether an employee had received the proper compensation, the City recalculated the salary for each 28–day cycle during the period. For example, the record indicates that one employee worked 228 hours in pay cycle No. 5 and was credited with unpaid over-

time of 16 hours (228–212 = 16). A separate computation revealed that the employee worked only 204 hours in pay cycle No. 6, and therefore, the firefighter owed the City for 4 hours of excess computation (212–204 = 8). The City then computed the net balance of the employee's account after making similar computations for every 28-day cycle during the period.

**804**

## DISCUSSION

Under the FLSA, an employer is exempt from paying overtime in connection with the work of certain employees. *See* 29 U.S.C. § 213. The exemption at issue in this case is one which exempts from the overtime requirements of the FLSA "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The district court concluded that the City had satisfactorily established the applicability of this exemption for the BFS captains, but not for the lieutenants. Only the Union has appealed.

### A. Captain's Exemption

A captain reports to a battalion chief, who is one rank higher and whose duties involve coordinating the efforts of three different fire stations. A captain is an employee who has achieved a higher rank than lieutenant; and a firefighter is lower in rank than either a captain or a lieutenant. Each of the City's thirty-four fire stations has a captain, whether it is a single or double company station.[6] Only double company stations have lieutenants.

 In this case, the City had the burden of proving the administrative exemption. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). Additionally, in determining whether an administrative exemption exists, we must narrowly construe the overtime provisions of section 207 against the City. *See Brennan v. Sugar Cane Growers Co-Op of Fla.*, 486 F.2d 1006 (5th Cir.1973).

Federal regulations provide two tests for determining whether an employee qualifies for the administrative exemption of the FLSA—the "short test" and the "long test." *See* 29 C.F.R. §§ 541.2, 541.2(e)(2) (1987). Title 29 C.F.R. § 541.2 provides that:

> The term "employee employed in a bona fide ... administrative ... capacity" in section 13(a)(1) of the Act [29 U.S.C. § 213(a)(1)] shall mean any employee:
>
> (a) Whose primary duty consists of either:
>
> (1) The performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers, ... and
>
> (b) Who customarily and regularly exercises discretion and independent judgment; and
>
> (c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or
>
> (2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or
>
> (3) Who executes under only general supervision special assignments and tasks; and
>
> (d) Who does not devote more than 20 percent ... to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and
>
> (e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ... exclusive of board, lodging, or other facilities, or
> ...
>
> (2) ... *Provided*, That an employee who is compensated on a salary or fee basis of not less than $250 per week ... and whose primary duty consists of the performance or work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all the requirements of this section.

Under the "long test," an employer must establish all five elements of the regula-

---

**6.** Atlanta has twenty double stations with two firefighter companies housed in the same building, and fourteen single stations. A single station usually has four firefighters, including a captain. A double company station usually has eight firefighters, including a captain and lieutenant.

tion. Under the "short test," the employer need only establish the requirements of subsection (e)(2). As is readily apparent, an employer seeking to establish an exemption first seeks to qualify under the "short test"; if that effort fails, the "long test" is used.

The "short test" requires that an employee be paid "on a salary basis" and have a "primary duty" as an administrator. 29 C.F.R. § 541.2(e)(2). Federal regulations define "on a salary basis" as follows:

> An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not *subject to reduction* because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work. [Emphasis added.]

29 C.F.R. § 541.118(a).

■ Captains receive the same pay for each nine-day cycle or ten-day cycle during the year. As indicated earlier, the scheduling needs of the fire department and the number of groups make it impossible for the City to schedule captains to the same number of days each pay cycle. Although captains do not receive the same pay each pay period, this fact does not preclude a finding that they are paid a predetermined amount. Under the BFS system, each captain knows at the beginning of each year the exact amount of pay for each nine-day cycle or ten-day cycle. Consequently, we conclude that captains are paid a predetermined amount.

■ The focus of the Union's challenge to the district court's finding, however, concerns the issue of whether the predetermined compensation is subject to reduction because of variations in the quality or quantity of work performed. The Union argues that because a city ordinance requires that all city employees' compensation be decreased for arriving late or for violating other BFS regulations, the captains cannot, as a matter of law, qualify for the administrative exemption. As the district court noted, however, the Union presented no evidence to prove that any captain ever suffered a reduction in pay for any of the reasons stated. Accordingly, we conclude that the City has demonstrated that a captain's pay is not subject to reduction because of the quality or quantity of work.

■ The second prong of the "short test" requires the City to establish that a captain's "primary duty" is administrative. An employee's "primary duty" is administrative if for 50–percent of the time the employee is "responsible for work which is characteristic of employment in a bona fide administrative capacity ... related to management policies or general business operations." 29 C.F.R. § 541.206; *see also* 29 C.F.R. § 541.103. The evidence in this case indicates that, although a captain acts upon directions of a battalion chief, a captain generally has discretion in implementing these directions. Moreover, the evidence indicates that a captain can make changes in the daily activity agenda of the fire station. Captains also direct emergency operations, inspect buildings that are potential fire hazards, and inspect fire hydrants. No evidence exists to indicate that a captain performs much of the manual work associated with the traditional role of firefighting. The City presented testimony that the captain's role involves making strategic decisions on how to fight the fire, and when necessary, to perform manual work. Accordingly, we conclude that a captain's primary duty is to perform bona fide administrative tasks. Consequently, both prongs of the short test have been met, and we hold that the captains are exempt from the overtime provisions of the FLSA.

## B. FLSA violations

### (i) Firefighters

■ The Union contends that the City violated the FLSA by incorrectly computing the overtime award to firefighters for the period April 15 to September 3, 1986. The Union also attempts to argue on appeal that the City violated the FLSA by failing to make "timely" overtime payments for the period April 15 to September 3. This timeliness issue was not raised in the complaint and first appeared in the Union's third supplemental brief in support of its motion for summary judgment. Since the City had no notice of this issue and the district court did not address it, we will not consider it for the first time on appeal.

■ In computing the overtime award for the period in question, the City applied each firefighter's hourly rate to the firefighter's "compensable time" during April 15 to September 3.[7] The City did not include holidays and relief days not worked in its determination of whether the 212 hour overtime threshold had been met.

As to liquidated damages, the statute provides: "Any employer who violates the provisions of section 206 or section 207 of [FLSA] shall be liable to the ... employees affected in the amount of their ... unpaid overtime compensation ... and in an equal amount as liquidated damages." 29 U.S.C. § 216(b).

> In any action ... to recover ... liquidated damages, under the Fair Labor Standards Act of 1938 as amended [29 U.S.C.A. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation ... the court may, in its sound discretion, award no liquidating damages or award any amount thereof not to exceed

the amount specified in section 216 of [FLSA].

29 U.S.C. § 260.

The Union asserts that the firefighters are entitled to overtime compensation under the FLSA for holiday and relief days. Thus, the Union argues that the City violated the FLSA through its decision to retroactively offset accrued overtime compensation by implementing an hourly rate and excluding holiday and relief days from the overtime compensation. *See Blanton v. City of Murfreesboro*, 658 F.Supp. 1540 (M.D.Tenn.1987), *aff'd in part and modified in part*, 856 F.2d 731 (6th Cir.1988). Under the firefighters' contract with the City, holidays and relief days are to be counted for compensation purposes. The contract counts the holiday and relief days; the FLSA does not count them. The district court awarded the firefighters compensation for holiday and relief days pursuant to a breach of contract theory. In doing so, the court noted that the FLSA does not require an employer to count hours not actually worked or relief days in determining whether the 212 hour threshold requirement has been met. *See Boll v. Federal Reserve Bank of St. Louis*, 365 F.Supp. 637, 646–47 (E.D.Mo.1973) (the FLSA does not require employers to compensate employees for holiday time and personal convenience time). Therefore, the City did not violate the FLSA, but violated the contract by not counting holiday and relief days. Only a violation of the FLSA results in a right to liquidated damages under the Act.

■ The Union's additional argument is that the City's retroactive reduction of accrued overtime constitutes discrimination prohibited by the FLSA. *See* 29 U.S.C. § 215(a)(3). Section 215(a)(3) makes it unlawful for an employer to "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the [FLSA]." The district court concluded that the City institut-

---

**7.** "Compensable time" included actual hours worked, sick leave, vacation leave, military duty, on-the-job injury time, and jury duty.

ed the overtime provisions to comply with the requirements of the FLSA and did not discriminate nor intend to discriminate against the employees through the use of these provisions. The Union failed to present evidence to support its assertion that the City in recalculating overtime acted in retaliation against the employees' for the filing of this lawsuit. No evidence supports such an assertion. Accordingly, we hold that the district court correctly granted summary judgment to the City on this issue.

### (ii) Lieutenants

■ The Union contends that the district court erred by failing to award liquidated damages to lieutenants. According to the Union, the City's failure to evaluate whether lieutenants were entitled to the administrative exemption belies the City's claim that it acted in good faith. The City acknowledges that it violated the Act as to lieutenants, but asserts that it has satisfied its burden of demonstrating good faith because it relied on an administrative decision of the Administrator of the Department of Labor's Wage and Hour Division. The administrator's decision concluded that the salary test was not applicable to lieutenants. We conclude, as did the district court, that in this case, the City's reliance on the administrative decision satisfies its burden of demonstrating good faith. Additionally, record testimony indicates that the City did evaluate the job duties of lieutenants.

### C. Office workers

■ Finally, the Union contends that the district court erred by failing to consider and resolve the BFS office workers' claims. The Union first raised the claims of these employees in its third supplemental brief in support of its motion for summary judgment. The district court declined to consider the claims of these workers based on its finding that the complaint specifically stated that members of the

class were "firefighters." Upon review of the pleadings, we agree with the district court that the office workers are not members of the class. *See* Fed.R.Civ.P. 23(c)(3).

### CONCLUSION

In summary, we hold that captains are exempt from the overtime provisions of the FLSA, the computation of overtime was correct, the City acted in good faith, and office workers are not members of the class.

### AFFIRMED.

GODBOLD, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in the opinion of the court except in two respects, as to which I dissent.

### EXEMPTION OF CAPTAINS

I am not able to agree that, pursuant to the "short test," captains are exempt from the overtime provisions of the Act after September 3, 1986 when pay for them began to be based on the exact number of hours they actually work. To meet the "short test" for exemption from overtime the employee must be paid "on a salary basis." 29 C.F.R. § 541.118(a). As I understand it, the number of hours worked by captains varies in each 28–day period. Captains work 24 hours every third day with 12 hours off of one shift (the "relief day," to minimize work in excess of 212 hours [1]). Accordingly, the pay of captains vacillates depending on the number of actual hours they work in each particular pay period. When a captain works four shifts in a two-week (14–day) pay period, he is paid for 96 hours. When he works five shifts in the next pay period he is paid for 120 hours.

This is not pay "on a salary basis," as defined by § 541.118(a). The pertinent provisions of the Regulation are that one must be paid a predetermined amount, *which amount is not subject to reduction because of variations in the quantity* [and

---

**1.** This is the threshold that, for firefighters, separates base pay and overtime pay. 29 C.F.R.

§ 553.230.

quality] *of his work*, that is, the employee must receive his full salary without regard to the number of days or hours worked.

Overtime pay for captains is subject to reduction based on the *quantity* of the work performed, four shifts or five shifts. The captains do not receive full or fixed pay without regard to time worked. To the contrary, pay fluctuates depending on time worked. This is hourly pay, pure and simple, not salary. That the fluctuations are predictable so that amounts of pay are predetermined at the beginning of each year does not eliminate the fact that payment does fluctuate based on variations in quantity of work.[2]

## RETROACTIVE CALCULATION OF PAY AND OVERTIME PAY

### April 15–September 3, 1986

As the district court found, for the period April 15–September 3, 1986 firefighters understood that if they worked all scheduled shifts they would be paid "full pay," that is, all pay to which they were entitled under their basic contract rights with the city in accordance with longstanding custom. Nothing was done to change their expectations until after September 3.

*Garcia v. San Antonio Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) made overtime provisions of the Fair Labor Standards Act applicable to municipal employees. After *Garcia* a municipality could no longer pay on a straight time basis for overtime hours worked. To ease the transition to overtime pay for cities like Atlanta, Congress enacted the FLSA Amendments of 1986, Pub.L. 99–150, one of the provisions of which, for state and local governments, postponed the effective date of required overtime pay to April 15, 1986, one year from the date of the *Garcia* decision. During the one year of grace Atlanta did not adjust the work arrangements of its firefighters to meet the fiscal problems created by hours in excess of the 212-hour threshold, see n. 1, *supra*, becoming compensable at overtime rates. It continued to pay for all work on a "straight time" basis. Then, in the fall of 1986, having failed to act during the grace period, the city converted to a new hourly pay system for firefighters, effective September 3, with overtime pay to commence once the 212 hour threshold has been reached in each 28-day cycle. This left unresolved, however, the city's obligation for overtime pay between April 15 and September 3. Obviously this imposed a fiscal burden upon the city. The city purported to address this obligation by retroactively recalculating the compensable hours each firefighter worked between April 15 and September 3 and recalculating base pay and figuring overtime. It did not count relief days actually worked and it did not count as hours worked holidays not actually worked (previously treated as work time because firefighters could take holidays as leave time).[3] Before April 15 both of these elements had been counted as work time. In short, for the April 15–September 3 period, the city retroactively redefined what constituted work in order to reduce hours worked by firefighters, thereby reducing base pay earned for the period.

---

**2.** The district court addressed the contention of plaintiffs that captains were not salaried employees because they were subject to having their pay docked for arriving late or for other violations of Fire Bureau regulations, and rejected it because there was no evidence that captains were actually docked. The district court did not address the point I have described, nor has this court addressed the issue on appeal.

 The district court also rested its decision concerning the "on a salary" issue on a letter from the Administrator of the Wage and Hour Division to the city stating that the Division would not enforce the "salary basis" requirement for captains. The district court stated it would give "substantial deference" to that decision. The Division did not construe §§ 541.118(a) and 541.2(e)(2) as not applicable to the captains or suggest that in fact the captains met the salary requirement. Rather it chose, as an administrative matter, not to insist upon compliance. No authority has been offered to support the idea that this discretionary administrative decision to eschew enforcement deprived employees of the private rights accorded them by the statute and the Regulations.

**3.** Plaintiffs contend that the city's new standards for compensable work for the April 15—September 3 period violated provisions of the city's own ordinance. I merely note the contention; I have not pursued it.

It reduced overtime pay due by setting off against it overpayments of base pay as shown by the new calculation. Some firefighters simply suffered a reduction in their overtime pay. For others, the recouped base pay exceeded their earned overtime, so that they were required to reimburse the city, and their pay checks were docked until the city was repaid.

The effect of the city's actions was a raid upon the overtime pay of employees. It is obvious that it could not stand. The district court held that it violated the rights of the firefighters to be paid in accordance with their contract rights based on longstanding custom, and that funds recouped by the city must be repaid. But, the court held, the Act had not been violated because the city had not intended to discriminate. Therefore, it denied liquidated damages and attorney fees, recoverable under § 8 of the Act for such a violation of overtime pay provisions.

I would hold that there was intentional discrimination, but there is no need to debate this point because intent to discriminate is not required. *Blanton v. City of Murfreesboro*, 856 F.2d 731 at 735 (6th Cir.1988). That case discusses fully the legislative history that clearly shows intent to discriminate is not relevant.

The Act was intended to preserve the right of a governmental employer, at some future time, to adjust rates of pay in response to fiscal concerns not directly attributable to the impact of extending FLSA coverage to their employees. But the Act also intended to preserve the premium rate requirement for overtime pay that had been a part of the Act for half a century. A municipality cannot unilaterally reduce pay or benefits so as to negate the premium overtime compensation mandated by the legislation. A contrary result would allow public employers to deny permanently the overtime compensation that the *Garcia* decision and congressional act intended public employees to receive. *Blanton, id.* In *Blanton,* the city of Murfreesboro, like

Atlanta, redefined the contours of compensable time (in its case, by excluding meal time and sleep time as compensable). The firefighters objected, so the city adjusted their base wage rate downward. Similarly, in *Alexander v. City of Plainview*, 694 F.Supp. 221 (N.D.Tex.1988), the city reduced the hourly rate of pay. None of these devices survived scrutiny.

There is not even a whisper of a suggestion of any acceptable justification for the city's retroactively changing the method of calculating hours of compensable work already established for the April 15–September 3 period other than to reduce its liability for overtime pay, which is precisely what it did and precisely the type of action that the Act proscribes.[4] It is true that the Act does not require an employer to compensate employees for holiday time and personal convenience time, or to count hours not actually worked in determining whether the threshold for overtime has been met. But that is not what is involved in this case. There could hardly be a clearer demonstration of violation of the Act than occurred: Under contract arrangements currently in effect, firefighters had established compensable time and been paid base pay for it. Then their compensable time was retroactively recalculated and reduced pursuant to new standards, with the consequence that they were found to have been overpaid. These manufactured overpayments were applied against the city's obligations for overtime pay that it should have, but had not, paid during the same period. This was not only a violation of the contract but of the Act as well, and for this aspect of the case the firefighters were entitled to liquidated damages pursuant to 29 U.S.C. § 216(b) and to attorney fees.

---

4. There is a suggestion in the district court's opinion that the city was delayed in learning of the grace period and that it had difficulty getting its computers to handle the intricacies of the pay system for firefighters. Neither is a valid reason for the city's action.