[Cite as *Perkins Twp. v. Intl. Assn. of Firefighters, Local 1953*, 2019-Ohio-3706.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Perkins Township | Court of Appeals No. E-18-041 |
| Appellee | Trial Court No. 2017 CV 0625 |
| v. | |
| IAFF Local 1953 | **DECISION AND JUDGMENT** |
| Appellant | Decided:  September 13, 2019 |

* * * * *

John A. Coppeler, for appellee.

Ryan J. Lemmerbrock and Brooks W. Boron, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, the International Association of Firefighters, Local

1953 ("IAFF" or "the union"), appeals the September 17, 2018 judgment of the Erie

County Court of Common Pleas, granting the motion of plaintiff-appellee, Perkins

Township ("the township"), to vacate a conciliation award, and denying the union's counterclaim to confirm and enforce the award. For the reasons that follow, we reverse the trial court judgment.

## I. Background

{¶ 2} IAFF is the exclusive bargaining representative for all full-time employees of the Perkins Township Fire Department except its fire chief. IAFF and the township were parties to a collective bargaining agreement ("CBA") that was set to expire on September 30, 2016. In August of 2016, the parties began negotiating a successor CBA.

{¶ 3} Following negotiations, a number of items remained unresolved, including—as relevant to this appeal—terms respecting overtime eligibility and health insurance benefits. Simply summarized, with respect to overtime eligibility, the township proposed a change to the CBA that would exclude hours of paid leave from overtime eligibility calculations. IAFF insisted that all hours—including hours of paid leave— should be counted in determining overtime eligibility, as had been the practice under the existing CBA.

{¶ 4} With respect to health insurance benefits, the township proposed changes that were meant to mirror those that had been agreed upon between the township and its police bargaining unit, the Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP"). The township and the FOP had agreed as follows:

- the township would pay 100 percent of police officer premiums for 2017, including $56,000 paid to obtain lower premiums for 2017;

2.

- for 2017, the township would contribute $500 into a Health Savings Account ("HSA") for single coverage, and an additional $500 for coverage for a spouse, dependent, or family coverage;

- "wellness credits" would no longer be provided;

- the township's healthcare expenses would be capped at $650,000 in 2018, and $660,000 in 2019, with amounts in excess divided among the employees based upon an "employee units" formula;

- the township Health Insurance Committee would convene to consider modifications in coverage and insurance costs if premiums increased more than five percent in a given year; and

- the township would no longer be obligated to offer insurance coverage for police officers' spouses if premiums exceed $650,000 in 2018, and $660,000 in 2019.

{¶ 5} IAFF, on the other hand, proposed that employees' 15 percent premium contributions be maintained; that "wellness credits" continue; and that changes in health insurance benefits be negotiated and agreed upon by the parties prior to implementation.

{¶ 6} When the overtime eligibility and health insurance issues could not be resolved, the parties invoked the fact-finding procedures set forth in R.C. 4117.14. A factfinder issued a report and recommendation on May 23, 2017.

{¶ 7} With respect to overtime eligibility, the factfinder recommended that "overtime be based on hours worked with clarifications of how individual overtime provisions are to be interpreted." The factfinder stated that under his recommendation,

3.

all employees would be paid overtime for "callbacks" to work regardless of actual hours worked towards the CBA's overtime threshold.

{¶ 8} With respect to health insurance benefits, the factfinder recommended as follows:

- Wellness program: Each employee and covered spouse may earn wellness credits of $400 each for each of the five segments of the wellness program. If the township determines not to offer a wellness program, it must pay $1,000 per calendar year to each employee and covered spouse.

- Employer contributions: The township will pay 100 percent of the premiums for 2017, but its contribution toward premiums will be capped at $650,000 for 2018, and $660,000 for 2019, with the township to share in excess premiums over the cap on a 50/50 basis, and employees' contributions to be determined according to an "employee units" formula.

- Coverage for spouses: The township must continue to provide contributions for insurance for spouses even if premiums exceed $650,000 for 2018, and $660,000 for 2019.

- Midterm changes to insurance and Health Insurance Committee: The committee may initiate changes in insurance coverage if premiums increase by ten percent, however, the committee may not unilaterally increase deductibles, change those eligible for coverage, or change premium contributions.

4.

{¶ 9} As provided by R.C. 4117.14(C)(6)(a), IAFF and the township voted on the factfinder's recommendations. The township voted to approve them; IAFF voted to reject them. The parties then resorted to R.C. 4117.14's final-offer settlement procedure before a conciliator. In accordance with R.C. 4117.14(G)(3), each party submitted conciliation position statements setting forth their final offers on the unresolved issues. And as provided in R.C. 4117.14(G)(7), the conciliator was charged with resolving the parties' dispute by selecting from between each of the party's final offers on an issue-by-issue basis.

{¶ 10} As to the issue of work hours eligible for overtime, the township's final offer was to modify Article 19 of the CBA so that only hours "actually worked" would be considered as work hours eligible for overtime. IAFF's final offer was to maintain the established practice of counting hours in active pay status towards overtime eligibility, but to modify the CBA to exclude from overtime eligibility calculations hours of sick leave, hours already eligible for overtime pay (holdover, callback, tone outs, court appearance overtime), and hours of unearned time off referred to as "Kelly Days."

{¶ 11} As to the issues relating to health insurance, the township's final offer proposed the following:

- maintain a 15 percent employee insurance premium contribution;

- rename "wellness credits," referring to them as "deductible reduction credits," with credits of $400 each in the first year of the contract, $350 in the second year, and $300 during the third year; and

5.

• raise the premium increase "trigger" for the Health Care Committee to consider plan changes from five percent to ten percent and eliminate the committee's authority to change the firefighters' premium contribution percentage mid-term.

For its final offer, IAFF proposed the same terms that had been recommended by the factfinder in his May 23, 2017 report and recommendation.

{¶ 12} The conciliator issued his award on September 19, 2017, adopting IAFF's final offers. He observed that with respect to health insurance benefits, "[t]he union's final offer is based on the factfinder's recommendation, which was accepted by the township as part of the factfinder's report." The conciliator expressed his belief that he could have fashioned a better resolution, but emphasized that he was required to select "the offer of one party or the other without modification."

{¶ 13} On December 8, 2017, the township filed a motion in the Erie County Court of Common Pleas under R.C. 2711.10, asking the court to vacate the conciliation award. IAFF counterclaimed under R.C. 2711.09 and 2711.12 to confirm and enforce the conciliation award. On June 29, 2018, the trial court entered judgment in favor of the township and ordered modification of the conciliation award.

{¶ 14} With respect to the calculation of overtime, the trial court found that the conciliation award was contrary to law and that the conciliator exceeded his powers because "under the FLSA, an employer is only required to include those hours an employee *actually works* in calculating eligibility for overtime pay." It held that "[h]ours not actually worked, such as personal days, vacation days, comp time days, sick leave

6.

days and the like are not required to be included in calculating hours the employees work in order to determine if overtime is to be paid under FLSA."

{¶ 15} With respect to health insurance benefits, the trial court held that the conciliation award was contrary to law and that the conciliator exceeded his powers because the award violates R.C. 505.60(A), which provides that "[i]f the board procures any insurance policies under this section, the board shall provide uniform coverage under these policies for township officers and full-time township employees and their immediate dependents."  The trial court observed that the township had entered into a CBA with police officers and offered health insurance benefits to township administrative employees and officers under terms that differed from those of the conciliation award.  The court concluded that any terms concerning health care benefits allowed under the conciliation award that differed from those offered to police officers and administrative employees and officers must be vacated or modified.

{¶ 16} IAFF appealed.  We remanded the case to the trial court because the June 29, 2018 judgment did not conform to the requirements of R.C. 2711.12, and was, therefore, not final and appealable.  The trial court entered a new judgment on September 17, 2018.  IAFF filed an amended notice of appeal, and assigns the following errors for our review:

> 1.)  The trial court erred when it vacated the overtime terms of the conciliation award on grounds that the awarded terms were "contrary to law."

7.

2.) The trial court erred when it vacated the health insurance terms of the conciliation award on grounds that the awarded terms were "contrary to law."

3.) The trial court erred by failing to hold the Township waived claims concerning the legality of the parties' final offers regarding overtime or insurance when the Township failed to raise such claims at conciliation.

4.) The trial court erred by ordering the Union to execute a Collective Bargaining Agreement containing terms not contained in either party's final settlement offers and in violation of the dispute resolution procedure of Ohio Rev. Code 4117.14.

5.) The trial court erred by denying the Union's counterclaim to confirm and enforce the conciliation award.

6.) The trial court erred by denying the Union's request for pre-judgment and post-judgment interest on the conciliation award.

## II. Law and Analysis

{¶ 17} IAFF argues in its first and second assignments of error that the trial court erred when it concluded that the conciliation award was contrary to law both as to overtime eligibility and health insurance benefits. It argues in its third assignment of error that the township waived any claim that the conciliation award was illegal. In its fourth assignment of error, it argues that the trial court erred by ordering it to execute a CBA that contained terms that were not in either party's final offer. It argues in its fifth assignment of error that the trial court erred by denying its counterclaim to confirm and

8.

enforce the conciliation award. And in its sixth assignment of error, IAFF argues that the trial court erred by failing to award it pre- and post-judgment interest on the conciliation award.

{¶ 18} A conciliator's final-offer settlement award is subject to R.C. Chapter 2711, which governs arbitration awards. *Fraternal Order of Police, Queen City Lodge No. 69 v. Cincinnati,* 168 Ohio App.3d 537, 2006-Ohio-4598, 860 N.E.2d 1073, ¶ 11 (1st Dist.). A party may move to vacate the conciliator's award in the common pleas court, but the trial court's authority to vacate the award is limited. *Id.* It may not review the merits upon which the award was based, and it may not vacate the award merely because it disagrees with a finding of fact or with an interpretation of the contract. *Id.* The trial court may vacate the conciliator's award only for reasons identified in R.C. 2711.10: "fraud, corruption, misconduct, exceeded powers." *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 19 (2d Dist.).

{¶ 19} In reviewing a trial court's decision to confirm, modify, vacate, or correct a conciliator's award, we must accept findings of fact that are not clearly erroneous, but we must review questions of law de novo. *Portage Cty. Bd. of Developmental Disabilities v. Portage Cty. Educators' Assn. for Developmental Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804.

9.

**A. The trial court erred in concluding that the overtime eligibility terms awarded by the conciliator were contrary to law.**

{¶ 20} The practice of the parties under the expiring CBA was to count all hours in active pay status, including paid leave, when determining eligibility for overtime. The township sought to exclude from the overtime eligibility calculation vacation time, personal days, comp time, and sick leave. It argued that its position was in accordance with Fair Labor Standards Act ("FLSA") requirements. IAFF proposed that hours worked for purposes of calculating overtime eligibility should include "all hours an employee is in active pay status, excluding sick leave and hours already eligible for overtime pay, including holdover, callback overtime, tone outs, or court appearance overtime, and Kelly Days." The conciliator selected IAFF's position.

{¶ 21} The trial court found that the conciliation award was contrary to law and that the conciliator exceeded his powers because "under the FLSA, an employer is only required to include those hours an employee *actually works* in calculating eligibility for overtime pay." It held that "[h]ours not actually worked, such as personal days, vacation days, comp time days, sick leave days and the like are not required to be included in calculating hours the employees work in order to determine if overtime is to be paid under FLSA."

{¶ 22} IAFF argues that the trial court erred in finding the conciliator's award contrary to law because it is not a violation of the FLSA for a CBA to establish overtime compensation terms that are more beneficial to employees than the minimum overtime

10.

standards established under the FLSA.  The township counters that "the conciliator's order to include non-worked hours in calculating when firefighters would be entitled to overtime went far beyond the legal requirements of FLSA."

{¶ 23} "The FLSA is a remedial statute setting the floor for minimum wage and overtime pay."  *Chasteen v. Rock Financial*, E.D.Mich. No. 07-cv-10558, 2012 WL 8705090, *4 (Jan. 31, 2012).  It establishes a "minimum floor that an employer is free to exceed."  *Molina v. First Line Sols. LLC*, 566 F.Supp.2d 770, 779 (N.D.Ill.2007).  An employer does not violate the FLSA by offering its employees more favorable overtime terms than what is required under the statute.  *Kirvard E. Div. Inc. v. Antero Resources Corp.*, S.D.Ohio No. 2:15-CV-633, 2016 WL 7868902, *9 (Aug. 9, 2016).  *See* 29 C.F.R. 541.4 ("The Fair Labor Standards Act provides minimum standards that may be exceeded, but cannot be waived or reduced. * * * [E]mployers on their own initiative or under a collective bargaining agreement with a labor union, are not precluded by the Act from providing a * * * a shorter workweek than the statutory maximum, or a higher overtime premium (double time, for example) than provided by the Act.").

{¶ 24} The township cites *Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 803 (11th Cir.1991) in support of its position that the conciliator exceeded his powers by selecting overtime terms more favorable than what is required by the FLSA.  In *Atlanta Professional Firefighters Union,* firefighters brought a class action lawsuit against the city for FLSA overtime violations stemming from its failure to count holiday and relief days in determining overtime eligibility.  The Eleventh

11.

Circuit concluded that the city's conduct violated the parties' contract, but did not violate the FLSA. The firefighters were, therefore, not entitled to overtime compensation under the FLSA.

{¶ 25} IAFF points out that *Atlanta Professional Firefighters Union* involved a claim for damages under the FLSA—it did not involve a dispute for damages under the labor agreement and did not involve a motion to vacate a conciliation arbitration award. It emphasizes that the conciliator here was charged not with determining the right to overtime under the minimum standards of the FLSA; rather, the conciliator was charged with determining what the right to overtime should be under the CBA.

{¶ 26} We agree with IAFF. The task of the conciliator here was to resolve the parties' impasse over the terms of the CBA by selecting one of the parties' final offers. The FLSA sets a floor—not a ceiling—for an employer's obligation to pay overtime. *Kirvard E. Div. Inc.* at *9. The township cites nothing that would prohibit the conciliator from choosing a proposed final offer that places obligations upon the township that are more stringent than those required by the FLSA. As such, the conciliator was free to select IAFF's final offer and did not exceed his powers in doing so. The trial court erred when it held otherwise.

{¶ 27} Accordingly, we find IAFF's first assignment of error well-taken.

**B. Even if it may be said that the health insurance terms of the conciliation award violated R.C. 505.60, the township waived this argument.**

{¶ 28} Under R.C. 505.60(A), a board of township trustees of any township may "procure and pay all or any part of the cost of insurance policies that may provide

12.

benefits for hospitalization, surgical care, major medical care, disability, dental care, eye care, medical care, hearing aids, prescription drugs, or sickness and accident insurance, or a combination of any of the foregoing types of insurance for township officers and employees." If the board elects to do so, it "shall provide uniform coverage under these policies for township officers and full-time township employees and their immediate dependents." *Id.*

{¶ 29} The trial court held that the conciliator exceeded his powers and the conciliation award was contrary to law because the township offers health insurance benefits to police officers and township administrative staff and officers under terms that differ from those awarded by the conciliator. The court noted, for instance, that those employees are not provided "wellness credits" or lump sum payments, nor is the township required to pay additional premiums on their behalf if the premiums exceed specified cap amounts. The court held that under R.C. 505.60(A), the township is not legally permitted to make health insurance benefits available to its officers and employees on different terms. It, therefore, concluded that the terms of the health insurance benefits were contrary to law and that the conciliator exceeded his powers. It ordered that the award be vacated or modified to the extent that it included terms that differed from the health insurance benefits provided to the township's police officers and administrative employees and officers.

{¶ 30} IAFF points out that neither party proposed that the firefighters be awarded health insurance under terms identical to those provided to police or administrative employees, and the township did not contend during conciliation that R.C. 505.60

13.

required the conciliator to award insurance under the same terms. IAFF also maintains that, in fact, R.C. 505.60 does not require all township employees to pay the same amount for health insurance, nor does it specify that costs for insurance coverage must be uniform for all employees. Rather, it claims, R.C. 505.60(A) requires only uniformity in the *coverage* offered. It relies on 1992 Ohio Atty.Gen.Ops. No. 92-068 in support of its position.

{¶ 31} In 1992 Ohio Atty.Gen.Ops. No. 92-068, the attorney general was asked whether township trustees are permitted to spend different amounts for medical premiums for each trustee, or whether amounts of medical premiums must be the same. The attorney general recognized that under R.C. 505.60(A), if a board of township trustees chooses to procure health insurance policies, it must provide "uniform coverage under [the policies or contracts] for township officers and full-time township employees and their immediate dependents and may provide coverage * * * for part-time township employees and their immediate dependents." *Id.* at * 4. He noted that "[t]he statute does not require that the premium charged or amount paid for each trustee be uniform; it requires, instead, that the *coverage* be uniform." (Emphasis added.) *Id.* He concluded that "[i]f, in order to provide uniform coverage, the township must spend different amounts for different township trustees, that variation in expenditure is permitted under the statutory scheme." *Id.*

{¶ 32} IAFF maintains that this opinion makes clear that R.C. 505.60(A) requires only uniformity in insurance *coverage*—not uniformity in employee *expenditures* for

14.

insurance coverage. It insists that to hold otherwise would ignore the express language of R.C. 505.60(A) and would circumvent the union's ability to bargain health insurance benefits under R.C. Chapter 4117.

{¶ 33} The township responds that "R.C. 505.60 does not permit distinctions to be drawn among groups of officers and employees, even if the persons within each group are similarly situated." It insists that it lacks authority to enter into health insurance agreements that provide "disparate coverages and benefits to different employees depending upon the employee organization to which they belong." The township claims that the conciliator's award here would require it to enter into a contract containing an illegal provision.

{¶ 34} The township relies on 1998 Ohio Atty.Gen.Ops. No. 98-019, in support of its position. The question posed to the attorney general there was whether a township that elects to provide health insurance coverage to employees and officers could pay for different portions of coverages yet still be compliant with R.C. 505.60 requiring "uniform coverage" for such persons. The attorney general explained that R.C. 505.60(A) "does not authorize a township to make such insurance available to such officers and full-time employees on different terms." *Id.* at * 4. It concluded that "[b]y paying a larger part of the cost of insuring its full-time employees and their immediate dependents than it pays to insure its officers and their immediate dependents, the township is not complying with its duty under R.C. 505.60(A) to provide uniform coverage for its officers and full-time employees and their immediate dependents." *Id.* at * 4.

15.

{¶ 35} The township argues that IAFF's reliance upon 1992 Ohio Atty.Gen.Ops. No. 92-068, is misplaced because the opinion concludes only that if, in order to provide uniform coverage, the township must spend different amounts for different township trustees, that variation in expenditure is permitted under the statutory scheme. But, it claims, while variations in the costs incurred to insure employees or officers are permitted where the coverage provided is the same, "variations in deductibles each employee must bear are *not* permitted because their coverages are then not uniform."

{¶ 36} We need not determine which attorney general opinion is on point here, however. This is because during the conciliation process (1) the township itself proposed a final offer that would provide for costs different from those agreed to with the FOP and other township employees, and (2) it failed to argue during conciliation that the conciliator lacked authority to select either of the parties' final offers.

{¶ 37} "[T]he failure on the part of a party to object to the scope of arbitration constitutes a waiver of the right to contest that issue on appeal." *City of Fostoria v. Ohio Patrolman's Benevolent Assn.,* 106 Ohio St.3d 194, 2005–Ohio–4558, 833 N.E.2d 720, ¶ 28. Moreover, a party may not procure a reversal of a judgment "for an error for which he was actively responsible." *Id.* at ¶ 14.

{¶ 38} The Seventh District considered this issue in *Jefferson Cty. Sheriff v. Ohio Patrolmen's Benevolent Assn.*, 7th Dist. Jefferson No. 05 JE 36, 2006-Ohio-1055. In *Jefferson Cty. Sheriff*, the sheriff's department and the Ohio Patrolman's Benevolent

16.

Association ("OPBA") engaged in the conciliation process after they were unable to successfully negotiate a successor CBA. One issue requiring resolution involved health insurance benefits.

{¶ 39} Both the sheriff and the OPBA submitted final offers for consideration by the conciliator. The sheriff's final offer provided:

> The employer shall make available to all full-time bargaining unit employees the same major hospitalization care insurance plans that are available to non-bargaining unit Jefferson County employees. If such non-bargaining unit Jefferson County employees are required to pay a portion of the monthly insurance premiums, the same contribution shall also apply to bargaining unit employees through payroll deduction. The monthly insurance premiums in effect at the execution of this agreement shall remain in effect until January 31, 2005. All insurance requirements specified for such non-bargaining unit Jefferson County employees shall also be applicable to bargaining unit employees. The employer will provide the Union advance notice of any modifications to the plan and/or of the individual employee's monthly insurance premium.

*Id.* at ¶ 12. But the conciliator adopted OPBA's final offer, which provided:

> The Employer shall provide hospitalization, medical service coverage, and other health insurance benefits at the benefit level substantially equal to or better than the existing coverage. The employer reserves the right to change coverages or carriers, so long as the new

coverage is substantially equal to the existing coverage. Under no circumstances shall the plan provided by the Employer contain costs to the employee in excess of those listed in the schedule of medical benefits set forth as Appendix 1, which is incorporated herein by reference. Nor shall the Employer be permitted to decrease any of the services or benefits set forth in Appendix 1.

Effective January 1, 2004, the employee's share of healthcare premiums shall be $87 per month for single coverage and $128 per month for family coverage. These amounts shall remain unchanged unless the employer unilaterally reduces the amounts and/or a different amount is negotiated, or ordered pursuant to the parties' 2004 wage and benefit reopener.

*Id.* at ¶ 14-15.

{¶ 40} The sheriff moved to vacate the award in the common-pleas court, and OPBA moved to confirm it. The sheriff argued that the conciliator exceeded his powers in adopting OPBA's final offer. He argued that the conciliator's award would require the sheriff to act beyond his authority because under R.C. 305.171, only the county commissioners could control the content of the health plan. The sheriff contended that the conciliator had no power to order him to ensure that plan content is maintained.

{¶ 41} OPBA responded that the conciliator was required to select between the parties' final offers, and "that the conciliator does not exceed his power by choosing the Union's final offer where the Sheriff never objected to the propriety or lawfulness of the

18.

Union's offer at fact-finding or at the conciliation hearing." *Id.* at ¶ 26. OPBA claimed that the sheriff "engaged in the bargaining process over this issue and thus waived any claim that the conciliator had no power to make an order that matched the Union's final offer." *Id.*

{¶ 42} The Seventh District agreed with OPBA. First, it concluded that the conciliator did not exceed his powers because "a conciliator award that orders the Sheriff's budget to be spent in certain ways does not order the Commissioners to perform an act." *Id.* at ¶ 27. But beyond that, the court also observed that the sheriff "failed to raise before the conciliator the argument regarding the conciliator's power over the content of coverage." *Id.* at ¶ 31. It explained that "the legality of a contract must be raised to the arbitrator in order to preserve the issue for appellate review," and "submission to arbitration without objection is implicit authorization that the arbitrator has the power to decide the disputed issues." *Id.* at ¶ 32.

{¶ 43} Instead of raising the purported illegality of the union's proposed final offer, the sheriff in *Jefferson Cty. Sheriff* participated in the conciliation process, agreeing to bargain on the issue of health insurance. He was on notice of OPBA's final offer and knew that the conciliator was required to select from between each of the party's final offers, yet he never objected or refused to bargain on that issue; rather, he argued only over whether OPBA's final offer was reasonable and cost-effective. The Seventh District concluded that "[b]y submitting to the statutory process and failing to object to the legality of the Union's final offer on the grounds now raised, the Sheriff waived the right to claim that the issue should not have been subjected to bargaining." *Id. Compare Allen*

19.

*Cty. Sheriff v. Fraternal Order of Police, Ohio Labor Council, Inc.,* 3d Dist. Allen No. 1-11-55, 2012-Ohio-3122 ¶ 16 (distinguishing *Jefferson Cty. Sheriff* where the Allen County sheriff objected throughout proceedings). *But see Licking Cty. Sheriff's Office v. Teamsters Local Union No. 637*, 5th Dist. Licking No. 2008CA00152, 2009-Ohio-4765, ¶ 37 (finding that R.C. 4117.10 does not preempt the general powers to contract statute or permit collective bargaining parties to do that which is contrary to law).

{¶ 44} Here, not only did the township fail to object during the conciliation proceedings, it also proffered a final offer that suffers from the same purported infirmity as the one proffered by IAFF. In fact, the township voted to approve the identical terms proffered by IAFF following a recommendation by the fact-finder. As such, the township has waived any argument that the conciliator exceeded his powers in adopting terms relating to health insurance benefits that were not identical to those that the township agreed to with the FOP.

{¶ 45} Accordingly, we find IAFF's third assignment of error well-taken. We also find IAFF's second assignment of error well-taken to the extent that it claims error in the trial court's decision to vacate the health insurance provisions of the conciliation award.

{¶ 46} Because we have concluded that the trial court erred in vacating the conciliation award both as to the overtime eligibility and health insurance provisions, we deny as moot IAFF's fourth assignment of error, in which it claimed that the trial court erred by ordering it to execute a CBA containing terms not contained in either party's final settlement offer.

20.

**{¶ 47}** Given our conclusion that (1) the trial court erred in finding that the conciliator exceeded his powers with respect to the overtime eligibility provisions, and (2) the township waived any objection to the conciliation award with respect to the legality of the health insurance provisions, we find that the trial court erred in denying IAFF's counterclaim for confirmation of the conciliation award.[1] We, therefore, find IAFF's fifth assignment of error well-taken.

**{¶ 48}** Finally, as to IAFF's sixth assignment of error—that the trial court erred by denying its motion for pre- and post-judgment interest—this issue was never addressed by the trial court. We, therefore, remand this matter to the trial court so that it may consider IAFF's request for pre- and post-judgment interest.

### III. Conclusion

**{¶ 49}** We reverse the September 17, 2018 judgment of the Erie County Court of Common Pleas. We find that the trial court erred when it concluded that the conciliator exceeded his powers in adopting IAFF's final offer for determining overtime eligibility. The provision, which was more stringent than the FLSA minimum standards, was not contrary to law. IAFF's first assignment of error is well-taken.

---

[1] Strangely, the township—which initiated the motion to vacate the conciliation award in the trial court—argues that the conciliation award may not be confirmed because a written record of the conciliation hearing was not provided to the trial court. At the same time, however, the township asks us to affirm the trial court judgment which was issued in its favor without a written record from the conciliation hearing. We reject the township's position under these circumstances, particularly given that the disputed issues in this case are legal issues that were thoroughly briefed and summarized by the conciliator and not simply factual issues that were developed at an oral hearing.

21.

**{¶ 50}** We further find that the township waived any argument that the conciliator's award with respect to health insurance benefits violated R.C. 505.60(A) because (1) the township itself proposed a final offer that was not identical to health insurance terms applicable to the FOP and other township employees, and (2) the township failed to raise an objection during conciliation. The trial court, therefore, erred when it vacated the health insurance provisions of the conciliation award. IAFF's second and third assignments of error are well-taken.

**{¶ 51}** We deny as moot IAFF's fourth assignment of error in which it claimed that the trial court erred by ordering it to execute a CBA containing terms not contained in either party's final settlement offer.

**{¶ 52}** In light of our resolution of IAFF's first, second, and third assignments of error, we find that the trial court erred in denying IAFF's counterclaim to confirm the conciliation award. IAFF's fifth assignment of error is, therefore, well-taken. We remand this matter to the trial court so that it can consider IAFF's request for pre- and post-judgment interest—the subject of its sixth assignment of error.

**{¶ 53}** Perkins Township is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed.

22.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.              _____
                                           JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.                  _____
CONCUR.                                          JUDGE

                                           _____
                                           JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.